The Wabash Railroad Company *v.* Williamson.

———————

No. 239.

THE WABASH RAILROAD COMPANY *v.* WILLIAMSON.

RAILROAD.—*Killing Cattle.—Complaint.—Name.*—In an action against a railroad company for the killing of cattle, while operating the road of another company, it is not necessary to allege in the complaint in what name the road was being operated. See sections 4001 and 4025, R. S. 1881.

SAME.—*Joint Operation of Railroad.—Contract Between Companies.—Effect of.* —Where two railroad companies run and operate a road jointly, the one as owner and the other as lessee, each agreeing to pay for all stock killed by its own trains, the fact that the lease provided that the officers of one of the companies should prescribe the rules for and direct the running of all trains can not in any way change the character or effect of the contract.

SAME.—*Company Operating on Another Road.—Liability of for Damages.*—Under section 4001, R. S. 1881, the owner of locomotives and trains operated and run over another railroad is liable to persons for damages occasioned by such locomotives and trains to the same extent as though the track and road upon which said locomotives and trains were run and operated belonged to the company owning and operating the same.

SAME.—*Private Farm Crossing.—What Does not Constitute.—Killing of Animals.*—Where a land-owner puts up gates in a right of way fence to enable him to go from his land to a private side-track on the railroad right of way, said gates do not constitute "a private farm crossing," within the meaning of the acts of April 8th and 13th, 1885, and the railroad company is liable in damages for the killing of stock belonging to a third person which entered on its right of way through said gates.

SAME.—Railroad companies can not make contracts with private persons to make openings in its fence for private purposes, and thereby relieve itself from the duty it owes to the general public to keep the road securely fenced, except at private farm crossings where the railroad right of way separates tracts of land into two parcels, and to enable the owner to go from one piece of land to another thus separated.

The Wabash Railroad Company *v.* Williamson.

SAME.—Where a railroad company permits or contracts with an individual to put gates in its right of way fence, or to make openings therein, when it could not be compelled to do so under the law, it is liable for damages resulting to all except the contracting parties.

DAMAGES.—*Judgment for.*—*Interest May be Added.*—In an action for tort, where exemplary damages are not allowed, interest may be added by the court from the date of the commencement of the action to the sum which it finds to represent the loss.

PRACTICE.—*Answer.*—*Demurrer.*—It is proper to sustain a demurrer to a paragraph of answer when the facts alleged therein may be presented under the general denial already on file.

From the Porter Circuit Court.

*C. B. Stuart, T. A. Stuart* and *W. V. Stuart,* for appellant.
*E. D. Crumpacker* and *S. C. Spencer,* for appellee.

ROBINSON, C. J.—The complaint in this action was in two paragraphs. The material facts alleged in the first paragraph were: That the defendants, the Chicago and Atlantic Railway, the Wabash Western Railway Company and the Wabash Railroad Company, were, at the time of the commission of the grievances complained of, railway corporations organized and existing under the laws of the State of Indiana; that at said time the Chicago and Atlantic Railway Company was the owner of a line of railroad extending from the city of Chicago through and across the counties of Lake and Porter, in Indiana, and thence on eastward; that the defendant the Wabash Western Railway Company at the same time had a lease of said line of the Chicago and Atlantic Railway Company, by the terms of which said Wabash Western Railway Company had the right to run its locomotives, engines and trains of cars over said railroad; that on the 27th day of June, 1888, while said railroad was so run and operated by the said Wabash Western Railway Company (the same being at the same time also used and operated by the Chicago and Atlantic Railway Company), nine head of cattle owned by the plaintiff entered upon said railroad, in said Porter county, at a point where the same ought to have been securely fenced but was not, and while

upon said railroad were run upon, against and over by a train of cars owned and operated by the defendant the Wabash Western Railway Company, whereby the said cattle were injured and killed, of the value, etc.; that said cattle entered upon said railroad and were killed without fault or negligence on the part of the plaintiff; that subsequently the Wabash Railroad Company, by purchase or consolidation (plaintiff being unable to state), succeeded to the rights, privileges and franchises and to the lease of said Wabash Western Railway Company from the Chicago and Atlantic Railway Company, as aforesaid, whereby said Wabash Railroad Company became and was liable for the damage to plaintiff's said cattle, as the successor by purchase or consolidation of said Wabash Western Railway Company, etc.

The second paragraph of the complaint is substantially the same as the first, except it charged that the Wabash Western Railway Company subsequently changed its corporate name to that of the " Wabash Railroad Company," and that it was the duty of both of said defendants to keep said line of said railroad company securely fenced through said county.

The appellant, the Wabash Railroad Company, appeared to the action, and filed a motion to require the appellee to make each paragraph of the complaint more specific, which motion was overruled, and exception taken.

The appellant then demurred to each paragraph of the complaint, which was overruled, and exception taken.

The appellant, the Wabash Railroad Company, answered in six paragraphs:

1. General denial.

2. That the appellant, the Wabash Railroad Company, was the successor of the Wabash Western Railway Company; that the appellee's cattle were killed by a train of the Wabash Western Railway, which the Chicago and Atlantic Railway Company authorized to run upon its road in Indiana, but that said cattle entered upon the track of the Chi-

cago and Atlantic Railway from the premises of one Burk, through which its said road passes, and upon whose lands said cattle were trespassing, and that they so came on said railway through a private gate in the land-owner's fence, which gate said Burk provided for his own convenience, and which was left open not by the appellant, but by persons to the appellant unknown.

3. Admits that appellee's cattle entered and were killed upon the track of the Chicago and Atlantic Railway Company, and by a Wabash Western Railway train, which the Chicago and Atlantic Railway Company authorized to run thereon; that the appellant is the successor of the Wabash Western Railway Company; that said killing was caused by the locomotive or some car of said Wabash Western Railway train, etc; but that said cattle were trespassing upon the lands of one Burk, and from thence entered upon the Chicago and Atlantic Railway's track at a point on said Burk's premises where the Chicago and Atlantic Railway Company had and maintained a switch or siding for the delivery and receipt of freight, and through an opening in the railway fence used by persons who shipped and received freight from and upon said switch, which opening was necessary for said purpose, and was put in by said Burk for his own convenience and accommodation, and under his direction; said cattle having so entered on said right of way were killed opposite or near the said switch or side-track, and it was a place where the Chicago and Atlantic Railway Company were not by law required to fence their road, without interfering with the free use of said switch by the public, for whose convenience it was put in.

4. The Wabash Railroad Company was a corporation, organized under the laws of the State of Indiana, and engaged in operating and controlling lines of railroad in and through a portion of said State, but that said Wabash Railroad did not own, operate or control a line of railroad in said State

in June, 1888, at the time of the injuries alleged in the complaint.

5. Said Wabash Railroad Company was a corporation under the laws of Indiana, and engaged in operating and controlling lines of railroad through a portion of said State, but no part of said railroad so operated, etc., was in said county of Porter; that at the time of the happening of the injuries complained of the Wabash Western Railway Company was running its trains over a line of railroad through said county of Porter, known as the "Chicago and Atlantic Railway," which was owned and operated by said last-named company, and said trains of said Wabash Western Railway were governed, controlled and operated by the said Chicago and Atlantic Railway Company, its officers, agents, servants and employees, and said Wabash Western trains were governed by the rules and regulations of said Chicago and Atlantic Railway Company; that at the place on said Chicago and Atlantic Railway Company where said stock entered upon the right of way of said railway company and were killed and injured was a private gate, or where bars had been placed in the fence along said right of way for the convenience of the land-owners, and with which gate, bars or fence, or the keeping of same closed or in secure condition the Wabash Railroad, or its predecessors, had nothing whatever to do, and no control or power over.

6. This paragraph contained substantially the same allegations as the other paragraphs as to the organization of the Wabash Railroad Company, and being the successor of the "Wabash Western Railway;" that no part of said Wabash Western Railway was in the county of Porter; that at the time of the happening of the injuries complained of "The Chicago and Atlantic Railway was a corporation owning, operating and controlling a line of railway through said county of Porter; that the said Wabash Western Railway and the Chicago and Atlantic Railway Company had a contract under the terms of which said Wabash Western Rail-

way was run over and upon the lines owned, etc., by said Chicago and Atlantic Railway Company, and said trains were controlled, managed, etc., by said last-named railway company, its officers, agents, servants, etc., and were governed by the rules and regulations of said railway company ; that neither the appellant nor the Wabash Western Railway Company had lines of railroad of their own, nor in their names, in said Porter county, nor was it the lessee, assignee or receiver of any line of railway in said county; that by the terms of said contract it was provided, among other things, that in the case of killing of stock not in transit, caused by the operation of the trains of the Wabash Western Railway over the Chicago and Atlantic Railway, such claims should be adjusted by the proper officers of the Chicago and Atlantic Railway Company.

The appellee demurred to the second, third, fourth, fifth, and sixth paragraphs of appellant's answer, which was sustained as to the second, fourth and fifth paragraphs, and overruled as to the third and sixth paragraphs, and exception taken.

The appellee filed a reply of general denial, and under the issues thus formed the cause was submitted to the court for trial. At the request of both parties the court made a special finding of facts, and stated its conclusions of law thereon. And under the finding of facts and conclusions of law thereon the court found for the appellee, and the appellant excepted separately and severally to each conclusion of law. Thereupon appellant filed a motion for a *venire de novo ;* also a motion for a new trial, for judgment upon the special findings notwithstanding the conclusions of law, and in arrest of judgment, in the order mentioned ; and each motion was overruled and exception taken, and the court thereupon rendered judgment upon the special finding of facts and conclusions of law, in favor of the appellee.

Several alleged errors are assigned as causes for the reversal of the judgment.

The first, second, and fourth errors assigned assail the ruling of the court below in overruling the demurrer to the complaint, and in overruling the motion to require the appellee to make each paragraph in the complaint more specific.

It is contended by the appellant that the demurrer should have been sustained to the complaint because the complaint is not sustained by the statute, and does not state in what name the road was run and operated. The complaint avers with sufficient certainty that the Chicago and Atlantic Railroad Company owned the road, and that it leased the railroad to the Wabash Western Railroad Company, and that these companies ran and operated the road jointly, from which statement the presumption is clear that the road was operated in the name of these companies.

Section 4001, R. S. 1881, provides, that "Every railroad company that shall run and operate its locomotives and trains upon the track and road of another railroad company shall be liable to third persons for all damages occasioned by such locomotives and trains, in the same manner and to the same extent as though the track and road upon which such locomotives and train were run and operated belonged to the company owning and operating the same."

Section 4025, R. S. 1881, provides: "Any railroad corporation, lessee, assignee, receiver, or other person or corporation, running, controlling, or operating any railroad into or through this State, shall be liable, jointly or severally, for stock killed or injured by the locomotives, cars, or other carriages run on such road, in the name in which the road was run or operated at the time, to the extent and according to the provisions of this act," etc.

In the case of *Cincinnati, etc., R. R. Co.* v. *Leviston*, 97 Ind. 488, it was held that it was not necessary in a complaint against a railroad company showing that the defendant was running, controlling or operating another railroad, on which the killing or injury was done, to allege that such road was

run or operated in the name of such defendant, or to allege in what name it was run or operated. The liability under the statute was clearly fixed upon the company running and operating the engines and trains regardless of the name in which the road was operated. The purpose of the statute is plain. The complaint was sufficient. The court correctly overruled the demurrer and no error was committed in overruling the motion to require the appellee to make the complaint more specific.

The appellant's next contention is, that the court erred in sustaining the demurrer of the appellee to the second, fourth and fifth paragraphs of the answer. There was no error in this ruling. The defence sought to be set up under these answers could have been proven under the general denial. The facts alleged in these paragraphs appellee was required to prove upon the trial of the cause, in order to make his case that he might have judgment.

The sixth assignment of error is, that the court erred in its conclusions of law on the finding of facts.

That this question may be properly presented, it is more convenient to set out such of the facts found as are material to the question, with the conclusions of law thereon.

The special finding of facts set out at length the contract between the Wabash Western Railway Company and the Chicago and Atlantic Railway Company, by which contract on the 27th day of June, 1888, the Wabash Western Railway Company ran its locomotives, engines, and trains of cars over the railroad of the Chicago and Atlantic Railway Company, across the counties of Lake and Porter, in the State of Indiana, in which contract, among other things, it was provided that the Chicago and Atlantic Railway Company had leased and demised unto the Wabash Western Railway, their successors, assigns, etc., for the purposes therein named.

It also provided that said railroad companies should operate the road jointly, and should have equal rights thereon,

and that each company should pay and settle all claims for injury committed by its trains and servants in the management of the railroad, including damages for the killing of stock, and that the officers of the Chicago and Atlantic Railway Company were to prescribe the rules for, and direct the running of trains over said road.

After setting out said contract, the court found as follows:

3. On the said 27th day of June, 1888, appellee was the owner of nine head of cattle; that said cattle had casually escaped from his field a few days before that date, and had entered into the enclosure of one Burk, lying immediately south of the said railroad, and abutting thereon; that on said date said cattle entered upon said railroad right of way, from the premises of said Burk, through two gates opening upon said premises in the right of way fence of said railroad, and wandered from thence west from 80 to 100 rods, and were run over and killed upon said railroad by a locomotive engine and train of cars, owned and run by the said Wabash Western Railway Company under said contract; that said cattle were of the value of $264.

4th. That there were two gates in the right of way fence opening upon the premises of said Burk about one hundred and thirty feet apart, through which said cattle entered upon the said right of way; that said gates were constructed and maintained for the convenience of said Burk to enable him to go from his said land to a side-track upon said railroads opposite said gates; that said side-track was built by said Burk and was for his individual use and benefit, and to enable him to ship hay, cattle and lumber to and from said point; that the land of said Burk lying upon the south side of said railroad was enclosed; that the land lying on the north side of said railroad opposite said gates and said side-track was owned by one Reeves, and was also enclosed; that said Burk owned a parcel of land north of said railroad and about a mile east of said gates and said side-track; that some time during the spring of 1887, the servants of said

Burk cut a panel out of the fence on the north side of said railroad opposite said gates and said side-track, to enable him to haul hay from the said parcel of land of said Burk's lying on the north side of said railroad and east of said side-track as aforesaid; that said panel was cut out of said fence and no gates or bars were constructed therein, and said panel remained open for several months prior to the 28th of June, 1888, with the knowledge of both of said railroad companies and the appellee; that said gates in said south right of way fence, through which said cattle entered as aforesaid, were left open on the 27th day of June, 1888, by some person unknown to the parties to this suit; that said cattle entered upon said right of way through both of said gates; that said side-track was about one hundred and eighty feet in length, and said cattle went upon said railroad track and were killed at a point about eighty rods west of said side-track; that there were no wing fences or cattle-guards connecting with the right of way fence along or about said side-track or gates for a distance of about a mile to the west, and there was nothing to hinder the appellee's cattle from wandering upon and down the railroad track for a distance of a mile to the west; that there were no houses or building within a half mile of said gates or side-track; that there was no station at said point or near there, except as above stated; that there were no highways leading to said gates or said side-track on either side of the railroad.

5th. That said cattle were killed by a train of the Wabash Western Railway Company, in Porter county; that after the killing of said cattle the Wabash Railroad Company succeeded to all the rights, etc., of the Wabash Western Railway Company by consolidation with said company, and was in full possession and control of the same, and was running its trains over the Chicago and Atlantic Railway under the contract set out in the special findings.

6th. The value of the damage done in killing the cattle was found, and that said gates were put in said fence in

the spring of 1887, and during the summer of 1888, prior to the 27th day of June, they frequently stood open for several days at a time; that to go over the right of way Burk had put plank between the rails, and had put ties in the ditch, all for the purpose of affording a passage-way for his teams to said side-track.

The court stated as its conclusions of law upon the foregoing facts:

1st. The gates through which the appellee's cattle entered upon the railroad were not at a private farm crossing, within the meaning of the law.

2d. The appellee's cattle entered upon said railroad and were killed at a point where said railroad ought to have been securely fenced, but was not.

3d. Finding for the appellee for the value of the cattle killed, with interest from the date of the commencement of the action.

Appellant's counsel claim in argument that under the facts found the Wabash Western Railway Company was not liable to the appellee in this action, because there was no lease existing between that company and the Chicago and Atlantic; that it was a mere running arrangement, with license and permission to use the Chicago and Atlantic property for a special purpose, and limited to only the right to have its trains run over the Chicago and Atlantic road under the direction and authority of the officers, agents and servants of that road, and subject to its rules and regulations.

We have set out in the facts found that part of the contract between the two companies which relates to this question, by which it appears that the Chicago and Atlantic Railroad company leased and demised unto the Wabash Western Railway, their successors, assigns, etc., for the purposes therein named.

It also provided that said railroad companies should operate the road jointly, and should have equal rights thereon, and that each company should pay and settle all claims for

injuries committed by its trains and servants in the management of the railroad, including damages for the killing of stock, and the officers of the Chicago and Atlantic Railway Company were to prescribe the rules for and direct the running of trains over said road.

The language so used in the contract between the two companies clearly and unquestionably made the Wabash Western Railway Company the lessee of the Chicago and Atlantic Railroad Company. More apt terms constituting a lease could not be employed.

The fact that the lease provided that the officers of the Chicago and Atlantic Railroad Company should prescribe the rules for and direct the running of the trains could not in any way change the character and effect of the contract. The companies ran and operated the road jointly, the Chicago and Atlantic as owner, and the Wabash Western as lessee, each agreeing to pay for all stock killed by its own trains. The relation between these companies under these facts as lessor and lessee clearly existed, and their liability for damages committed by them was fully established.

Section 4001, R. S. 1881, above quoted, provides that "Every railroad company that shall run and operate its locomotives and trains upon the track and road of another railroad company shall be liable to third persons for all damages occasioned by such locomotives and trains, in the same manner and to the same extent as though the track and road upon which such locomotives and trains were run and operated belonged to the company owning and operating the same."

This statute makes the owner of locomotives and trains operated and run over another railroad liable to third persons for damages occasioned by such locomotives and trains, etc., to the same extent as though the track and road upon which said locomotives and trains were run and operated belonged to the company owning and operating the same, and, therefore, fixes the liability in this action against the

Wabash Railway Company as the lessee of the Chicago and Atlantic Railroad Company.

The next question discussed, in argument, is as to whether there is any liability against any railroad company in this State for the killing of stock that entered on the right of way through gates erected by the land-owners since the legislation of 1885; and this leads to the inquiry and presents the material question to be determined under the facts found, whether the gates through which appellee's cattle entered were, within the meaning of the statute, "a private farm crossing."

Previous to the legislation of 1885, the law was settled in this State that railroad companies were not liable for the injury or killing of animals of adjoining land-owners for whose convenience private crossings and gates were constructed, where the animal passed to the track through such gates which such land-owners failed to keep closed, but they were liable to other persons whose animals might pass through such open gates to the track and there be injured and killed. *Indianapolis, etc., R. W. Co.* v. *Thomas,* 84 Ind. 194; *Baltimore, etc., R. R. Co.* v. *Kreiger,* 90 Ind. 380; *Evansville, etc., R. R. Co.* v. *Mosier,* 101 Ind. 597; *Wabash R. W. Co.* v. *Williamson,* 104 Ind. 154.

It is unnecessary to set out the acts of April 8th and April 13th, 1885, relating to farm crossings.  These statutes have been construed in *Hunt* v. *Lake Shore, etc., R. W. Co.,* 112 Ind. 69; *Jeffersonville, etc., R. R. Co.* v. *Dunlap,* 112 Ind. 93; and *Louisville, etc., R. W. Co.* v. *Hughes,* 2 Ind App. 68.

In *Jeffersonville, etc., R. R. Co.* v. *Dunlap, supra,* it is said: "Our conclusion upon the whole case is, that, notwithstanding the act of 1885, the corporation owning the railway, and the lessee, etc., are jointly liable for the injury or killing of animals, as formerly; that the manner of commencing and prosecuting actions for the injury or death of animals, and the manner of collecting judgments ob-

The Wabash Railroad Company v. Williamson.

tained, are the same as formerly, and that for a failure to fence, at all places required by the prior act, railway companies are liable for the injury and death of animals as formerly, except as to farm crossings and gates, the duty of keeping them closed having been expressly transferred, by the acts of 1885, from the railway company to the landowner. In other words, while, under the old law, the duty to fence the railway results from the liability imposed, and under the new, the duty to fence the portions of the road therein specified is positively enjoined, yet, the liability for the injury and killing of animals being the same, there is no sufficient reason why the old law may not be held to be in force as to the whole line, except, as already stated, so far as concerns farm crossings and gates."

In *Hunt* v. *Lake Shore, etc, R. W. Co., supra,* it is said: " The statutes of 1885 enacted into a right, on the part of the land-owner whose land is separated by rights of way of railway companies, in certain cases, what was before but a privilege voluntarily granted by such companies. Those statutes, also, impose upon such land-owners the duty of keeping the gates at such crossings closed, and thereby relieve the railway companies from all liability for the injury or killing of animals that may pass to the track through such gates."

Under these cases the question is, were the gates in the right of way fence through which the cattle entered upon the railroad a farm crossing within the meaning of the statute of 1885 under the facts found by the court?

The cattle were upon the land of one Burk, which abutted the railroad right of way on the south side. In the south right of way fence opening upon Burk's land there were two gates, about 130 feet apart, put in for the purpose of enabling him to reach a private side-track owned by him, and connected with the railroad, and, as appears from the facts found, this was the only purpose for which these gates were put in the fence. Burk did not own the land on the north side of the railroad opposite the side-track. The right of

way did not separate his lands into two parcels, and the gates were not put in for the purpose of enabling him to go from a tract of land on one side of the railroad to a tract on the other side.

Under some arrangement with the Chicago and Atlantic Company Burk had a private side-track on the railroad, and to enable him to get to the side-track the gates were put in the south right of way fence.

The appellee's cattle escaped from his own land and entered upon the land of Burk, and from Burk's land went through these gates upon the railroad and were killed, etc.   Burk owned a tract of land on the north side of the railroad about a mile east of the gates and side-track, but the land lying immediately north of the side-track and gates was owned by one Reeves.   This fact, however, does not aid in the determination of the question as to what constitutes a farm crossing.

It can not be said that a land-owner, with lands upon both sides of a railroad that is not severed into two pieces by the right of way, is entitled to a crossing.   The plain purpose of the law is to furnish crossings to land-owners whose lands are separated by the right of way.   A land-owner on one side of a railroad can not force a farm crossing to reach land on the other side if it does not join the railroad right of way.   The gates were not put in the right of way fence for the purpose of a crossing, but to enable Burk to go from his land to a private side-track on the railroad right of way. There was no crossing, either public or private, at this point.

Burk could not have compelled the railroad company to put the gates in the right of way fence under the statute of 1885, to enable him to go upon the right of way to reach his private side-track.

Under the law railroad companies can not make contracts with private persons to make openings in its fence for private purposes, and thereby relieve itself from the duty it owes to

the general public to keep the road securely fenced except at private farm crossings where the railroad right of way separates tracts of land into two parcels, and to enable the owner to go from one piece of land to another thus separated.

When a railroad company permits or contracts with an individual to put gates in its right of way fence, or to make openings therein where it could not be compelled to do so under the law, it is liable for damages resulting to all except the contracting parties.

The court did not err in the first and second conclusions of law on the facts found.

It is also claimed by counsel for appellant that the court erred in its third conclusion of law in finding that the appellee was entitled to a judgment with interest from the commencement of the action. No reason is assigned by the appellant why interest should not have been allowed. This court has held in *Chicago, etc., R. R. Co.* v. *Barnes*, 2 Ind. App. 213, " Where, in an action of tort, damages not exemplary are found to be due to the plaintiff, the jury trying the cause may, in its discretion, add interest to the sum which it finds to represent the loss."

There was no error in rendering judgment for the appellee with interest from the date of the commencement of the action.

Other errors assigned have been waived by reason of failure to discuss them or to assign any reason why there was error in the rulings of the court.

Judgment affirmed, with costs.

CRUMPACKER, J., was absent.

Filed Dec. 10, 1891.