**FIRST NAT. BANK OF LOWELL v. LOWELL NAT. BANK et al.**

Civ. No. 261.

District Court, N. D. Indiana, Hammond Division.

Nov. 17, 1942.

Crumpacker & Friedrich, Schuyler C. Dwyer, and John M. Stinson, all of Hammond, Ind., for plaintiff.

Bomberger, Peters & Morthland and Glenn D. Peters, all of Hammond, Ind., for defendant Lowell Nat. Bank.

John W. Lyddick, of Gary, Ind., for defendant Elmer Heitman, receiver.

SLICK, District Judge.

The two important questions involved in this suit are the right claimed by defendant to charge interest under a contract entered into between plaintiff and defendant on March 15, 1930, and the right claimed by defendant to charge back certain notes previously assigned to defendant by plaintiff, called the Foster notes.

Defendant argues in its brief that plaintiff's claim that the cash assets taken over by defendant were sufficient to pay all obligations assumed by it is not warranted; that it does not appear in the record that

926

such was the case and there's nothing in the record to justify any inference to that effect. In fact the opposite inference would be justified because plaintiff "could not take care of its obligations out of its assets."

This is a suit for an accounting. If defendant in fact was compelled to or did advance any cash to pay any obligations of the plaintiff it no doubt would be entitled to charge interest on the sum or sums so advanced for the period such advancements remained unpaid. If in fact defendant did advance money to pay the obligations of plaintiff which defendant assumed, it would be an easy matter for it to prove. It, defendant, kept the entire record. It knows, or from examination of its records can ascertain whether or not any such advancements were made. If the record is silent on this subject, it is because defendant does not choose to enter this field, and under the well-known rule that where a party litigant has it within his power at the trial of a cause to introduce evidence which would be to his benefit and without explanation fails to do so, it will be presumed either that no evidence on the subject exists, or that if evidence were introduced, it would be adverse.

Defendant seems to take the position that it is entitled to charge interest on what is called the "Liability Account" because it assumed an obligation it might have been called upon to pay; that it was compelled to keep itself financially able to pay at all times; a sort of ready-to-serve charge. I do not think this was contemplated in the written contract. This contract with schedules covers fifteen typewritten pages and gives every evidence of having been painstakingly and meticulously prepared by lawyers and laymen who knew what they were about. For instance, it, the contract, contains a clause which I have never seen in any other contract and which was evidently inserted for the purpose of circumventing a well-established rule of evidence known only by those well versed in the law and well grounded in the practice, viz.: "All previous tentative offers and acceptances and tentative contracts and resolutions drawn by the respective parties preceding and leading to the execution of this contract, or as preparatory thereto, are hereby referred to and made a part of this contract, but it is understood and agreed that in case any of the provisions of such propositions, offers and tentative agreements are .inconsistent with anything contained in this contract, the provisions of this contract shall control and be binding upon all the parties hereto."

So it would have been a simple and easy matter if it was intended that interest should be charged on all liabilities assumed, whether paid or not, to have inserted a clause to that effect. The very fact that no such clause was inserted, and no mention is made of interest, it seems to me, is almost conclusive that the parties did not intend that interest should be charged.

It is not pleaded and defendant does not seek to reform or correct the contract on the ground that a clerical mistake was made or on the ground of excusable neglect or mistake in preparing the contract, nevertheless a careful reading of the contract discloses that the drafters had the subject of interest in their minds and raises an inference at least that it was purposely left out. At page three the subject of interest is mentioned five times but no mention is made in the entire contract of interest on the "Liability Account" and the "Liability Account", while treated as a liability assumed, was not treated as an item paid or as an item on which defendant was necessarily called upon to make advancements. In three different places in the contract, namely, Paragraphs One, Three and Seven, liabilities are mentioned as "to be assumed and/or paid." This certainly means liabilities assumed and paid and liabilities which defendant might be called upon to pay though not specifically assumed. This, it seems to me, raises the inference that the parties did not contemplate that defendant would have to advance out-of-pocket money and hence did not think it necessary or important to provide for interest. At any rate no interest was provided for in the written contract and if defendant is entitled to interest, it must be by virtue of the Indiana Statute. Defendant cites Chapter 24, page 43, § 3, of the Indiana Acts 1879, Burns' Ann.St. § 19-2003, providing as follows: "On money due on any instrument in writing, * * * interest shall be allowed at the rate of six dollars ($6.00) a year on one hundred dollars ($100)."

This certainly means a written promise to pay a definite sum. There was no express or implied promise to pay any amount at any specified time. Defendant assumed the "Liability Account" of plaintiff and took over all of plaintiff's assets to liquidate them and pay the liabilities out of the money received in the liquidating process. Fortunately the assets produced sufficient

cash to pay the liabilities. Defendant was not required to advance any money. This being the case, no interest is allowable.

▇ Defendant claims the right to charge back the Foster notes. Under the terms of the contract this right did not exist and it can only exist by virtue of consent given to do so by plaintiff's liquidating agent. Therefore we must look to the written contract to determine what authority, if any, exists in the liquidating agent to give a consent binding upon his principal, the plaintiff. Paragraph Five of the contract provides, among other things, that plaintiff will have appointed a liquidating agent or agents with authority to confer with defendant "in reference to the handling of all of the assets and property assigned and set over to it and the affairs generally" of plaintiff. This authority of the liquidating agent as expressed in Paragraph Five seems to be limited to the power to confer in regard to the handling of assets. Power to agree to the cancellation of an obligation or to compromise a claim or to substitute one asset for another is wholly wanting. If such power was intended, it most certainly should and would have been written into the contract in no uncertain terms. It is hard to conceive that this power, so important to the plaintiff, could have been intended, and it should not be implied or written into the contract now. The authority of an agent when in writing is limited to the provisions in the writing and power to confer is not power to forgive or compromise. I am of the opinion that when the defendant selected the Foster notes it took title to them; they became the property of the defendant and the liquidating agent was without authority to consent to their being charged back.

I am of the opinion that plaintiff did not acquiesce either in the charging of interest or in the charge-back of the Foster notes and there being no provision in the contract to do either, the defendant had no right so to do.

▇ Demand upon the receiver to sue would most certainly have been futile in this case and plaintiff was not bound to make a useless or futile demand. The receiver is a party to this action, he has entered appearance by counsel and has resisted plaintiff's claims. After allowing the claim of interest and the charge-back of the Foster notes it would be doing a futile thing to demand that he bring suit to annul his previous action. He could not have complied without stultifying himself.

The statute of limitations had not run at the time this action was brought. Plaintiff is entitled to the relief prayed for in its complaint.