SHEA *v.* HORN REAL ESTATE AND INVESTMENT
COMPANY ET AL.

[No. 18,113. Filed December 26, 1951. Rehearing denied
February 28, 1952. Petition for rehearing on cross-
errors denied March 7, 1952. Transfer
denied October 7, 1952.]

Robert D. Markel, Wilbur S. Furlow, and Clifton L. Markel, all of Evansville, for appellant.

Benjamin E. Buente; Hatfield, Fine, Hatfield & Sparrenberger, all of Evansville, for appellees.

ACHOR, J.—This is an action filed by the appellant who is the remote lessor of a certain 99 year lease of an unimproved lot in the business district of the city of Evansville. Appellee, E. Horn Real Estate and Investment Company, an Indiana corporation, was the remote lessee of that lease. Other appellees are sublessees.

The controversy with which this court is concerned arose as a result of the failure of the lessor and lessee to arrive at an appraisal of the real estate by which to determine the amount of rent payable during the five-year period commencing January 1, 1944. As a result of said failure, a controversy arose as to the amount of rent payable and whether failure to pay the amount as found to be due by the court constituted a forfeiture of the lease. The pertinent parts of the lease are as follows:

"And after the said first day of January, A. D. 1874, for and during the remainder of said term of ninety-nine years, the sum of five per centum per annum upon the cash value of said real estate, exclusive of improvements, the value to be ascertained as hereinafter provided for, and payable in equal quarterly installments as aforesaid, also all the taxes, assessments, charges, liens, levied upon said property by any proper authority during the remaining term of ninety-nine years aforesaid, in like manner as provided in the first five years.

"The fair cash value of said real estate to be ascertained as follows, that is to say: at the end of the first five years, to wit: on the first day of January, A. D. 1869, and at the end of each succeeding term of five years during the remainder of said term of ninety-nine years, the said real estate exclusive of improvements, shall be valued or appraised at its fair cash value by two disinterested persons, not of kin to either party, nor connected with them in business, one to be chosen by the said parties of the first part or their legal representatives, and the other by the said party of the second part or his legal representatives, and in case of disagreement of said appraiser, thus selected, they shall themselves choose a third like disinterested person, and a majority of the three as chosen shall make the appraisement, and in case the said appraisers can not agree, or a majority thereof can not agree, then the appraisement as and for city taxes shall be taken as the true appraisement, and upon said appraisement so made

at the end of each and every five years of said term as aforesaid, shall the ground rent be fixed at five per centum per annum as aforesaid for the next succeeding five years in like manner to the end of the said term of ninety-nine years.

"And it is further provided that should any installment of rent or any taxes, assessments, lien or charges herein stipulated to be paid by the said party of the second part, his heirs, administrators, or assigns, remain unpaid after the same shall be due and payable, for the space of three months, then and in that case, the said parties of the first part, their heirs, executors, administrators and assigns, may enter in and upon said premises and declare said lease forfeited and subject the remaining part of said lease term together with any improvements that may be upon said real estate or parcel of ground, to the payment of such unpaid rent, taxes, charges or assessments, . . ."

Appellant's complaint is in four paragraphs. Each paragraph alleges that the appraisers appointed by the lessor and lessee had failed to agree upon an appraisement of the real estate in controversy and had further failed to agree upon a third appraiser as provided in the lease. Appellant's first and third paragraphs of complaint alleged further as follows:

"That the appraisement of said real estate as and for city taxes on the said January 1, 1944, was $120,000.

"That the annual rental for said real estate, pursuant to the terms and conditions of the said leasehold agreement, since January 1, 1944 was, and is, '5% of $120,000, to-wit: $6,000 per annum, and payable, $1,500.' quarterly, on the first day of April, July and October of 1944, and for each succeeding quarter for the balance of the succeeding five years."

Appellant's first paragraph of complaint further alleged failure of payment, demand of payment and a resulting forfeiture of the lease. It demanded imme-

diate possession and damages for unlawful possession.

Appellant's third paragraph of complaint omitted the allegation of forfeiture and prayer for possession. It merely demanded payment of the above rental, together with interest thereon.

Appellant's second paragraph of complaint alleged that the provision regarding appraisement for the purpose of determining the rental was an essential part of the lease, that it had become impossible of performance because of the fact that there had been no "appraisement as and for city taxes" for the year 1943 as originally contemplated and that, therefore, the lease had become inoperative and had terminated and that the lessee and sub-lessees were tenants only by sufferance. Appellant, therefore, demanded ejectment and damages for unlawful possession.

Appellant's fourth paragraph of complaint is very similar to paragraph two in its context except that instead of alleging a termination of the contract, appellant asked that the *court* fix the "fair cash value" of the property. Appellant then demanded judgment for unpaid rent calculated upon such valuation from January 1, 1944, with interest.

Appellees, by way of affirmative answer, alleged that the appraiser appointed by appellant was not a "disinterested person" as required by the lease; that by reason of that fact, appellant had not performed all the conditions precedent on her part to be performed and that, therefore, appellant was not entitled to equitable relief demanded. During the preceding five-year period appellee had paid a quarterly rental of $1,050.00. Appellee further alleged that over the five-year period in controversy it had continued to tender and pay the sum of $1,050.00 each quarter as rental and that such payments had been accepted by appellant

and, therefore, that no further sum was due and owing. Following the trial upon these issues, the court, at the request of appellant, made its special finding of facts and stated its conclusions of law upon the facts found.

Appellant assigned as error the overruling of appellant's motion for new trial, in which motion appellant, among other matters, asserted that (1) the court erred in excluding certain evidence as to the value of the real estate; (2) the finding of facts stated by the court were contrary to the evidence as to the amount of rent or damages chargeable on and after January 1, 1944; (3) the court erred in its conclusion of law that "plaintiff is not entitled to enter upon said premises and have the lease forfeited."

In conjunction with its motion for new trial, appellant filed a motion to amend the special finding of facts made, and for additional findings of facts upon issues not covered. This motion asserted that (4) the court had failed to make a special finding of facts as to interest, which was a material issue in the cause. The overruling of this motion is also assigned as error.

Other questions presented by appellant are so related to those above set out as to be covered by the discussion of the principles relative thereto as contained in this opinion.

Appellee assigned as cross-errors that the trial court erred in its conclusions of law "that the plaintiff is entitled to a judgment in the sum of $9,000.00." Judgment of the trial court was as follows:

"It is therefore considered and adjudged by the court that the plaintiff is entitled to cash the twenty (20) certified checks in her possession amounting to twenty-one thousand dollars ($21,-000.00) and that the plaintiff recover of and from the defendants the sum of nine thousand dollars ($9,000.00) together with the plaintiff's costs and charges in this cause laid out and expended."

Appellant contends that the failure of appraisement by the parties as provided in the lease made the lease inoperative as to any method for fixing the value of the property. She, therefore, contends that the lease either terminated *in toto* and is of no further effect, as alleged by her second paragraph of complaint, or it became the duty of the court to determine the value of the property, as alleged in her fourth paragraph of complaint. She contends that in the latter event, the court should also have calculated the rent due and unpaid, declared the lease forfeited for non-payment and entered the judgment for damages for such unlawful possession.

The consequence of the admitted failure of the parties to make an appraisement as provided by the lease can be determined only by careful examination of the lease itself. Admittedly, it was the intention of the parties from the beginning that the "fair cash value" of the property should be used in determining the rental to be paid, and that appraisal every five years was to be made to accomplish that end. However, it is equally true that the parties contemplated that there might be a failure of appraisement, and specifically contracted that in such event "the appraisement as and for city taxes shall be taken as the true appraisement." In this regard, it is contended by appellant that this aspect of the lease is wholly incapable of operation as originally intended by the parties. As contended, we must assume as a matter of law that the parties intended the then existing law governing the appraisement of the property for city taxes be incorporated in the contract. That law provided for the *annual* appraisement of property for its "fair cash value." Appellant contends that no such law existed in 1943—that the law in 1943

provided neither for an *annual* appraisement nor that the appraisement be for the *fair cash value*. The last appraisement for taxes was made in 1932, subject to a statutory directive of "equalization" instead of "fair cash value."

It is true that the respective statutes governing assessments are materially different. However, it is also a fact that the parties in making the original lease must also be considered to have contemplated changes in the statute governing the appraisement of property for tax purposes. Although appraisement was made in 1932, there was in 1943 a valid, subsisting assessment for city tax purposes pursuant to the laws of the state. By the plain and unequivocal language of the lease, we must assume that in event of the failure of appraisement by appointed appraisers, the parties intended to avoid litigation regarding the amount of rent payable and/or a resulting termination or forfeiture of the lease. This they did by providing, as a final stop gap upon the issue, that "appraisement as and for city taxes shall be taken as the true appraisement." The trial court so construed the lease and we concur in that construction.

It is contended further by appellant that by reason of the fact that the court found that appellees were delinquent in the payment of rent for a period in excess of three months that, therefore, the lease was forfeited by its own provisions and that it was the duty of the court to render judgment accordingly.

The findings of the court are silent as to any formal demand for payment of rent having been made by appellant upon the appellee. Failure to so find was not assigned as error. Therefore, we must assume that the evidence did not support a demand. The rent was not payable in advance, nor did

the lease provide for an automatic forfeiture. Therefore, there could be no forfeiture without demand having first been made. As stated in the case of *Templer* v. *Muncie Lodge, etc.* (1912), 50 Ind. App. 324, 328, 97 N. E. 546:

"If the rent provided for in the lease is not payable in advance, a failure to pay rent when due does not *ipso facto* terminate the lease, and if the lease does not contain a provision to the effect that it shall be forfeited on a failure to pay such rent, the lessor cannot declare a forfeiture on account of such failure to pay rent. In such case, however, the statute provides that he may terminate the lease by giving ten days' notice as provided by §8057 Burns' 1908, §5211 R. S. 1881, and in case the rent is not paid within ten days after such notice is given, the lease is terminated at the expiration of such time. *Campbell* v. *Nixon* (1891), 2 Ind. App. 463, 28 N. E. 107; *Cheek* v. *Preston* (1905), 34 Ind. App. 343, 72 N. E. 1048; *Leary* v. *Meier* (1881), 78 Ind. 393." See also 52 C. J. S., pages 554, 555.

As to appellant's allegation that the court committed error in failing to award interest to the appellant upon the rent found to be due and owing, appellant contends that no demand for the rent was necessary; that the bringing of appellant's suit on December 14, 1944, was sufficient to constitute such a demand. In support of his contention appellant cites *Levin* v. *Munk* (1929), 97 Ind. App. 118, 169 N. E. 82, 52 C. J. S., 416, Landlord and Tenant, §568, page 415, 32 Am. Jur., Landlord and Tenant, §433, page 353.

Generally the filing of a suit constitutes such a demand as to entitle the plaintiff thereafter to recover interest. However, the law is equally well established that the demand must be for a definite sum. This fact is supported by the case of *First National Bank of Lowell* v. *Lowell National*

*Bank et al.* (1942), 47 F. Supp. 925 (Northern Indiana District):

> "At any rate no interest was provided for in the written contract and if defendant is entitled to interest, it must be by virtue of the Indiana Statute. Burns' 19-2003, providing as follows: 'On money due on any instrument in writing, . . . interest shall be allowed at the rate of six dollars ($6.00) a year on one hundred dollars ($100).'
>
> "This certainly means a written promise *to pay a definite sum, . . .*" (Our italics.)

In the case at bar the amount due and owing was not fixed but was subject to determination on the basis of a contemplated appraisement. Plaintiff's complaint itself was not for a definite amount. There were several paragraphs to her complaint in which demands were made for sums which varied from $4,500.00 to $72,000.00.

Also, in order for plaintiff to recover interest, it must must appear that there has been a "long, unreasonable or vexatious delay in the payment" on the part of the debtor. *Cline* v. *Rodabaugh* (1931), 97 Ind. App. 258, 179 N. E. 6. The court, in its findings, found that the delay in bringing the case to trial over a period of more than five years was chargeable as much to the appellant as to the appellees. Under the evidence of the case, we cannot say that the court was bound to make a finding that interest was due the appellant and that judgment be rendered accordingly. Furthermore, this being a proceeding in equity, the allowance of interest was in the discretion of the court, depending upon all the circumstances. *Howcott* v. *Collins* (1852), 23 Miss. 398. See also 52 C. J. S., 416, Landlord and Tenant, §568, page 415, *supra;* 32 Am. Jur., Landlord and Tenant, §433, page 353, *supra.*

On the issue raised by appellees' first paragraph of answer, and assigned as cross-error that appellant had not first met the requirements of the contract by appointing a "disinterested person" as appraiser, the court found that "prior to January 1, 1944, Julia E. Shea, the plaintiff in this action, selected one Robert D. Markel, a disinterested person, not of kin to either party or connected with either of them in business as her appraiser." There is considerable conflict in the evidence as to whether or not said Robert D. Markel was in fact a "disinterested person" and we do not, by this opinion, approve the qualification of Markel to serve as such appraiser. We do not consider it necessary to render a decision upon that issue. Even though appellant had not appointed a disinterested appraiser and there was a failure of appraisement by reason thereof, this could not have the effect of avoiding liability on the part of appellee to pay rent. Had it appeared to the court, as a court of equity, that the failure of appraisement was chargeable to appellant and resulted in a disadvantage and loss to the appellee as to the amount of rent chargeable, the necessary alternative responsibility of the court would have been in itself to determine the "fair cash value" of the property and fix the amount of rental to be paid accordingly.

However, by the terms of the lease, in event of the failure of the appraisement by the parties, "appraisement as and for city taxes" should apply. The clear weight of the evidence supports the fact that the assessment of the real estate "as and for city taxes" was not in excess of the fair cash value thereof. We conclude, therefore, that no good purpose would be served by disturbing the judgment herein because of the issue as to the qualification of appellant's appraiser, Markel.

Regardless of an erroneous ruling (if any), where it affirmatively appears from the whole record that the ruling did not prejudice the adverse party, the Appellate Court will affirm. *Continental Life Ins. Co.* v. *Archibald* (1928), 87 Ind. App. 597, 162 N. E. 66.

Appellee further assigns as cross-error that the judgment is erroneous in that it provided for damages in the sum of $9,000.00 in excess of the $21,000.00 sent to the appellant by certified check. Appellee contends that the acceptance and retention of these checks over a period of six years was sufficient to constitute an estoppel on the part of appellant to now deny her acceptance of them as payment of the rent for which they were sent to her. Appellee cites the cases of *Donovan* v. *Maloney* (1912), 26 Del. 453, 84 Atl. 1032, 1034, and *Rohrbach* v. *Hammill* (1913), 162 Iowa 131, 143 N. W. 872, 875, as supporting their contention. Appellee Horn, when questioned on cross-examination regarding the reason for sending the checks to appellant, testified as follows:

"A. Because we didn't get the appraisers together, but I thought that would protect us by sending the same check we sent in 1943.

"Q. But that was your idea?

"A. Well, after talking to you, I thought we better start sending some money to show we were trying to get together on this thing . . . that's the reason."

Furthermore, appellee Horn stated in a letter written by himself to appellant, in which letter the second of the series of checks for $1,050.00 was mailed, as follows:

"We stand ready and willing to pay the rent negotiated by appraisers as provided by the lease and if it is more than the remittance already made

we will pay the difference, and if it is less you can reimburse us."

Under the above circumstances there was ample evidence by which the court could find, as it did, that appellee Horn mailed the checks in controversy ■ merely for the purpose of showing good faith; that the checks were not necessarily tendered or received as payment in full for the rental periods specified; that they were in the nature of payment on account, pending judicial determination of the issue in controversy and that, upon the determination of that issue, appellant should retain the checks, as intended, in part payment of the amount found to be due and owing.

Judgment affirmed.

NOTE.—Reported in 102 N. E. 2d 506.