FORT WAYNE NATIONAL BANK, Administrator of the Estate of Gerald P. Scher, Deceased, Plaintiff-Appellant,

v.

August SCHER, Mildred E. Scher, Ronald Scher, Hildigard Scher, Virgil R. Scher, and Martha J. Ditton, Defendants-Appellees.

No. 3-879A226.

Court of Appeals of Indiana,
Third District.

May 6, 1981.

Rehearing Denied July 9, 1981.

John F. Branham, Robert R. Glenn, Gordon, Glenn, Miller, Bendall & Branham, Huntington, for plaintiff-appellant.

James W. Bowers, Huntington, for defendants-appellees.

GARRARD, Judge.

The bank, as administrator of the estate of Gerald P. Scher, brought this action alleging the appellees had intermeddled with the estate or had concealed, converted or disposed of various assets of the estate.

After bench trial the court found that an automobile, value stipulated as $2500, and two payroll checks at a total face value of $710.30 were assets of the estate and that other items were not. The court also found appellees entitled to a credit for funeral expenses paid and entered judgment for the estate for $1902.30.

The bank appeals raising several issues.

### I. Bearer Bonds

In response to the bank's contention that August and Hildigard Scher, the decedent's parents, had converted a number of bearer bonds, appellees asserted receipt of the bonds was an inter vivos gift.

On appeal the bank urges that the burden of proof was on appellees, that the standard of proof should have been "clear and convincing evidence" and that the evidence is insufficient to sustain the court's determination that a gift had been made.

Assuming without deciding that the burden was upon the appellees we find the evidence ample to sustain the court's conclusion that a series of gifts had been made.

■ We reject the bank's contention that a standard of clear and convincing evidence should have been applied by the trial court. There is language to that effect in some of the cases considering gifts *causa mortis.* *See, e. g.,* Judge Bobbitt's separate opinion in *Re Collinson Estate* (1952), 231 Ind. 605, 108 N.E.2d 700. However, in considering inter vivos gifts the burden of proof is a preponderance of the evidence. *Accord Lewis v. Burke* (1967), 248 Ind. 297, 226 N.E.2d 332.

The record before us discloses the following.

Gerald, who died November 29, 1970, was a 48 year old electrical engineer who worked on temporary contract assignments throughout the United States. Although he maintained a permanent residence at his parents' home in Indiana, he would rent an apartment or room while out of the state on assignment. Gerald was unmarried at the time of his death, having divorced his former wife in 1959. He had one daughter, Donna, by this marriage who was 13 at the time of his death. Donna resided with her mother in New York and Gerald was prevented by the mother from seeing or talking with his daughter. He did write letters and postcards to Donna which were not acknowledged or answered. Gifts sent to Donna by Gerald and other members of his family were returned by her mother.

Gerald was considered by his family to be "the brains of the family." He often advised them in financial matters. In 1962, at a family gathering on a holiday, Gerald advised Virgil and Mildred that he was aware of church bonds that could be purchased to yield "pretty decent" interest. He suggested that the three of them purchase bonds and give them to their parents, August and Hildigard, to provide additional income for their retirement years. Virgil and Mildred agreed to this plan. Shortly thereafter a bearer bond was purchased and

was given to Hildigard. Gerald explained to Hildigard that as a coupon came due she was to clip it off the bond and send it in for the interest. He wrote several form letters for Hildigard to use to secure the interest payments. Gerald also explained to Hildigard that the bonds were bearer bonds and that she should hide them in a secure place.

Approximately 44 bonds were acquired. Gerald handled the purchase of all the bonds and decided which names would appear on the brokerage accounts. Accounts were opened in Gerald's and Mildred's names singly and in the names of Gerald and Mildred; Virgil and Ronald; and Gerald and Hildigard. Gerald contributed the majority of the funds for the purchase of the bonds although Ronald, Virgil and Mildred also contributed.

As the bonds were purchased, Gerald either hand delivered them to Hildigard and told her to put them with the rest or he told her that new bonds had been purchased and would be arriving by mail addressed to him at their mutual residence. He instructed Hildigard to open this mail and put the bonds with the others. He would later check to insure that the bonds had been received.

Prior to Gerald's death, four bonds reached maturity. Two of these bonds were purchased through an account in Mildred's name. At maturity Gerald instructed the broker to redeem the bonds and purchase others. The replacement bonds were thereafter shown as purchased through an account in Gerald's name. Two other bonds in an account carrying both Gerald's and Mildred's names were also redeemed for additional bearer bonds. The account name was not changed.

At Gerald's death Hildigard had possession of all the bonds purchased. She alone had redeemed the coupons as they came due. Gerald had not received any income from the bonds. Hildigard and August had not paid income tax on the money so collected nor did they pay the state intangibles tax thereon. There was no evidence that any other member of the family, including Gerald, had done so either. Virgil stated that Gerald had said the bearer bonds were non-taxable.

■ The testimony of Hildigard that Gerald had given her and August the bonds to provide income for their retirement was supported not only by the testimony of the other co-donors but by circumstantial evidence such as Hildigard's possession of all the bonds in existence at Gerald's death and the letter written by Gerald to aid Hildigard in cashing the coupons. The administrator points to evidence from which inferences contrary to a gift might have been drawn. However, we must once again note that we consider the evidence in the light most favorable to the judgment and do not weigh the evidence or judge the credibility of the witnesses.

■ We therefore find that the gift of the bearer bonds was supported by sufficient evidence and that the trial court did not err in finding that the bonds were not assets of Gerald's estate.

## II. Prejudgment Interest

The bank claims that it was entitled to prejudgment interest as a matter of right with respect to the value of the automobile and the two payroll checks.

■ Interest is recoverable in actions in tort where the damages sought to be recovered are complete and ascertainable as of a particular time and in accordance with fixed rules of evidence and known standards of value. *Rauser v. LTV Electrosystems* (7th Cir. 1971), 437 F.2d 800; *Independent Five & Ten Stores of N. Y. v. Heller* (1920), 189 Ind. 554, 127 N.E. 439; *New York etc. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468; *Indiana Telephone Corp. v. Indiana Bell Telephone Co., Inc.* (1976), 171 Ind.App. 616, 358 N.E.2d 218; *Soft Water Utilities, Inc. v. Le Fevre* (1974), 159 Ind. App. 529, 308 N.E.2d 395; *New York Central Railroad Co. v. Churchill* (1966), 140 Ind.App. 426, 218 N.E.2d 372.

■ The award of interest is founded solely upon the theory that there has been a deprivation of the use of money or its

equivalent and that unless interest be added, the injured party cannot be fully compensated for the loss suffered. *New York etc. v. Roper, supra; Grobe v. Kramer* (1942), 178 Misc. 247, 33 N.Y.S.2d 901. Interest is recoverable not as *interest* but as additional damages to accomplish full compensation. *Ind. Tel. Co. v. IBTC, Inc., supra.*

In some jurisdictions, the allowance of interest is a matter of legal right;[1] in others it is a matter within the sound discretion of the trier of fact.[2]

Although Indiana decisions appear in general agreement as to the prerequisites to recovering such damages, they disclose some confusion on whether the award, once the prerequisites are established, should be of right or discretionary with the fact finder.

The early cases of *Wabash Railroad Co. v. Williamson* (1891), 3 Ind.App. 190, 29 N.E. 455 and *Chicago, St. L. & P. R. R. Co. v. Barnes* (1891), 2 Ind.App. 213, 28 N.E. 328 took the view that their award was discretionary.

Then in *New York, C. & St. L. Ry. Co. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468, our Supreme Court considered the propriety of such awards. The court pointed out that the principle involved was not the award of interest as such, but was the rule of full compensation utilizing the statutory interest rate as a measure for the value of lost use of the property. The court then considered discretionary application and stated,

"The law dispenses no favors, and jurors should mete out equal and exact justice, and should not have the right to allow or refuse interest as one of the elements of just compensation. But in fixing the amount of damages in cases of this character they should be instructed

to find the value of the destroyed property as it was on the date of the destruction, and to that amount add interest thereon at the rate of six per cent per annum."

176 Ind. 497, 509, 96 N.E. 468.

In *Bryson v. Crown Oil Co.* (1916), 185 Ind. 156, 112 N.E. 1 the court affirmed a judgment in a conversion case against the contention that "prejudgment interest" could not be allowed. In doing so it quoted from a Pennsylvania decision explaining that such awards represent not true interest but compensatory damages for delay (loss of use). However, contained in the quotation was the assertion that such damages were not recoverable "as a matter of right." 105 Ind. 159, 112 N.E. 2.

Thus, although the Supreme Court reaffirmed the *Roper* position in *Independent Five & Ten Stores of New York v. Heller* (1920), 189 Ind. 554, 127 N.E. 439, a number of decisions over the years have continued to allude to the discretionary nature of including "prejudgment interest" to compensate a party for the lost use of property. *See, e. g., Indiana Tel. Corp. v. Indiana Bell Tel. Co.* (1976), 171 Ind.App. 616, 358 N.E.2d 218, modified 360 N.E.2d 610; *Stevens v. Howerton* (1911), 49 Ind.App. 151, 96 N.E. 968. Others have, at least by implication, followed *Roper*. *Indianapolis Machinery Co., Inc. v. Cohen* (1978), Ind.App., 378 N.E.2d 931.

We recognize, of course, that in some cases conflicting evidence may require the fact finder to determine whether or not the prerequisites to such recovery have been met.

In *Shea v. E. Horn Real Estate & Inv. Co.* (1951), 122 Ind.App. 636, 102 N.E.2d 506, the court acknowledged that where the proceeding is in equity the principles of equity

---

1. *Colonial Refrigerated Transportation, Inc. v. Mitchell* (5th Cir. 1968), 403 F.2d 541; *Vahlsing Christina Corp. v. Ryman Well Serv. Inc.* (Tex. Civ.App.1974), 512 S.W.2d 803; *Shaw v. Monongahela Ry. Co.* (1931), 110 W.Va. 155, 157 S.E. 170. *See* 36 A.L.R.2d 337.

2. *Scribner et al v. O'Brien, Inc. et al* (1975), 169 Conn. 389, 363 A.2d 160; *Louisville & N. R. Co.*

*v. Faust* (1923), 30 Ga.App. 310, 117 S.E. 761; *Black v. Minneapolis & St. L. Ry. Co.* (1903), 122 Iowa 32, 96 N.W. 984; *Damasiotes v. Dumas* (1952), 97 N.H. 402, 89 A.2d 756; *Hoke v. Whisnant & Tilley* (1917), 174 N.C. 658, 94 S.E. 446; *Marrazzo v. Scranton Nehi Bottling Co.* (1970), 438 Pa. 72, 263 A.2d 336.

apply in determining whether the damages are recoverable.

There may be other circumstances where full compensation does not require recovery for loss of use measured by the interest rate.

■ We find such problems to be quite distinct, however, from the notion that when all the necessary elements are present and undisputed, the award of damages for loss of use is a discretionary matter. In this regard we think *Roper* correctly states the rule, and it follows that upon the facts before us the court erred in not awarding damages for the lost use of the automobile and payroll checks from the time of their conversion. *Indianapolis Machinery Co., Inc. v. Cohen* (1978), Ind.App., 378 N.E.2d 931.

### III. and IV. Funeral Expenses

Gerald's total funeral expenses were $1,913.00. Of this amount, $605.00 was paid by the Veterans Administration, HEW and Huntington County, Indiana. The remainder, $1,308.00, was paid by Gerald's father, August Scher. The trial court allowed the appellees a credit against the judgment in that amount.

The administrator argues on appeal that the amount paid for funeral expenses was unreasonable because it represents more than half of the value of Gerald's estate.

■ In the absence of any statutory restriction to the contrary, the amount to be allowed against the estate of a decedent for funeral expenses is as a general rule a matter to be left, under all the circumstances in each particular case, to the sound discretion of the trial court. In determining whether an amount claimed is reasonable, the court should consider the necessity for the amount expended or incurred, the reasonableness of the price charged for the articles or services, and the decedent's rank

or condition in life, as well as the value of the estate. *Pease v. Christman* (1902), 158 Ind. 642, 64 N.E. 90.

■ Gerald was a 48 year old unmarried male who, for the most part, lived with his parents in his childhood home. For the four years preceding his death, Gerald had earned over $20,000 per year. The funeral director testified that the amount paid for Gerald's funeral expenses was normal at the time the expenses were incurred. The family did choose a casket priced slightly higher than normal because less expensive caskets were not large enough to accommodate Gerald's body.

· Under these circumstances we cannot say that the trial court abused its discretion in allowing a credit of $1,308.00 for funeral expenses. This amount was not per se unreasonable.

The administrator also argues that the funeral expenses which were paid by August Scher should not have been credited against the judgment rendered against all appellees. This bare assertion is not supported by cogent argument or citation of authority and we deem it waived. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Williams v. State* (1973), 260 Ind. 543, 297 N.E.2d 805; *United Farm Bureau Family Life Ins. v. Fultz* (1978), Ind.App., 375 N.E.2d 601. We additionally point out that no error concerning it was urged by the appellees *inter se.*

### · V. Costs and Attorneys' Fees

■ The administrator argues that Mildred Scher and Martha Ditton converted the automobile of Gerald and that their action constituted an offense against property (IC 35–43–1–1—35–43–5–5) to-wit: theft and/or criminal conversion. It therefore maintains that the estate is entitled, pursuant to IC 34–4–30–1,[3] to costs and attorneys' fees.

(1) An amount equal to three [3] times his actual damages;
(2) The costs of the action; and
(3) A reasonable attorney's fee. [IC 34–4–30–1, as added by Acts 1977. P.L. 26, § 17, p. 160.]"

---

3. "34–4–30–1. Damages for property loss caused by criminal act.—If a person suffers a pecuniary loss as a result of a violation of IC 35–43 [35–43–1–1—35–43–5–5] he may bring a civil action against the person who caused the loss for:

Assuming arguendo that this statute, which became effective prior to judgment but after this action was commenced, is applicable, we have concluded that the trial court did not err in refusing to allow costs and attorneys' fees.

In order for the administrator to recover under IC 34–4–30–1, it had to prove that Ditton and Mildred *knowingly* or *intentionally* exerted unauthorized control over the automobile with the intent to deprive the administrator of any part of its value or use (theft IC 35–43–4–2) or that they *knowingly* or *intentionally* exerted unauthorized control over the automobile (criminal conversion IC 35–43–4–3).

The evidence reveals that Martha Ditton was a close personal friend of Gerald. They would have married except for the fact that Gerald's religion prevented him from it. At the time of his death, Gerald was working in Grand Rapids, Michigan. Both he and Martha had rented rooms in separate rooming houses. Martha had accompanied him there from Indiana to assist in typing a book which Gerald was writing. After leaving Martha's room on the evening of November 29, 1970, he suffered a fatal attack while getting into his automobile.

The next morning Mildred and Martha drove the automobile back to Huntington, Indiana. Martha testified that Mildred told her Gerald would want Martha to have the automobile. Gerald had also indicated to Martha that he wanted her to have it.

Mildred found the title to the automobile in the glove compartment. She testified that Gerald's signature was on the assignment portion of the title when she found it. Mildred took it to the Fort Wayne License Branch; the branch personnel inserted Martha's name as purchaser and prepared an application for transfer of the title. Martha and Mildred, two weeks after Gerald's death, had both Gerald's and Martha's signatures notarized by a notary public in a service station. Mildred testified that she did these things because she thought that was what Gerald wanted. Martha had no intention of doing anything wrong. She thought she should have the automobile.

After carefully considering this evidence, we cannot say as a matter of law that Martha and/or Mildred *knowingly* and *intentionally* exerted unauthorized control over the automobile. Accordingly, the trial court did not err in refusing to allow costs and attorneys' fees.

Therefore, we remand with instructions to modify the judgment to allow for the loss of use of the property converted by the appellees. In all other respects the judgment is hereby affirmed.

HOFFMAN, P. J., and STATON, J., concur.