**Richard J. RAUSER, Plaintiff-Appellee,**

v.

**LTV ELECTROSYSTEMS, INC., Defendant-Appellant.**

**No. 18090.**

United States Court of Appeals, Seventh Circuit.

Feb. 9, 1971.

---

Carlson, Spencer & Matheny, Huntington, Ind., for defendant-appellant; Stanley H. Matheny, Huntington, Ind., of counsel.

Arthur A. May and Vincent P. Campiti, of Crumpacker, May, Levy & Searer, South Bend, Ind., W. Richard Herron, Elkhart, Ind., for plaintiff-appellee.

Before KILEY, FAIRCHILD and PELL, Circuit Judges.

PELL, Circuit Judge.

This was an action brought by Richard J. Rauser against LTV Electrosystems, Inc. alleging that LTV's predecessor, Memcor, Inc., had breached a stock option granted to Rauser. Memcor merged with LTV on April 19, 1967 subsequent to the alleged breach. LTV concedes its responsibility for Memcor's liabilities, if any, in connection with the action. The district court granted Rauser's motion for summary judgment on the issue of liability. Thereafter, following an evidentiary hearing, the court awarded Rauser damages based on the difference between the option price of $6 per share and the highest intermediate fair market value of Memcor's stock during what was determined by the court to be a reasonable time after the breach.[1] Rauser was also awarded interest from the damage date to the date of the judgment.

Rauser was a vice president of Memcor until September 1, 1966. On that date he resigned as vice president and assumed a consultant position with the title "Director of Labor Relations" and a salary of $160 per day, with $160 per week guaranteed. This relationship was terminated March 4, 1967.

1. The Memcor stock option entitled Rauser to purchase 1500 shares of the common capital stock of Memcor, Inc. within a period of two years from November 8, 1965. This was the equivalent of 1050 shares of common stock of LTV Electrosystems, Inc. and the fair market price of the latter stock was used by the court in determining the amount of the judgment based upon the equivalent 1050 shares.

2. "6. If an Optionee shall cease to be employed by the company for any reason (including retirement and disability) other than death after he shall have continuously been so employed for one year from the date of granting of his option, he may, but only within the thirty day period immediately following such termination of employment and in no event later than the expiration date specified in the option, exercise his option to the extent he was entitled to exercise to the date of such termination.

On November 8, 1965, while still a vice president, Rauser entered into a Stock Option Agreement with Memcor. Under it, he had an option to purchase a specified number of the company's shares at a price of $6 per share within two years. On March 30, 1967, following the termination of all connection with Memcor, Rauser sought to exercise his rights under the option agreement by tendering the option price. Memcor refused his tender and returned his check on May 2, 1967.

Defendant contends that Rauser was not eligible to exercise the option on several grounds.

It is undisputed that Rauser was eligible for the option when it was granted. It is further undisputed that his eligibility to be granted options ceased when he resigned as a vice president approximately 10 months after the original options were granted.

LTV contends that Rauser's initial eligibility had to be maintained for one full year after November 8, 1965, the date on which his option was granted, before he would become eligible to exercise the option granted to him. It relies principally upon Paragraph 6 of the Agreement and Paragraph 7 of the Plan.[2]

"7. EXERCISE OF OPTION

*      *      *      *      *

Each optionee becoming an employee after April 1, 1965, must remain in the employ of the Corporation or any one of its subsidiaries for one year from the date the option is granted before he can exercise any part thereof. Optionees who are employees as of April 1, 1965 shall not be subject to the one year employment requirement. Thereafter, subject to the provisions of Sections 8 and 9 herein, options will be exercisable as follows: The shares included in each option shall be divided into as many installments as there are years in the option period less one, each installment to be of approximately equal size. The first installment shall not be exercisable until after one year from the date the option is granted, and each succeeding installment shall not be exercisable until one year from the date that the prior installment became exercisable.

*      *      *"

■ We can find nothing in these paragraphs which expressly or impliedly supports LTV's position. It argues that "so employed" as used in Paragraph 6 of the Agreement should be interpreted to mean "employed within the terms of the original eligibility." However, "so employed" clearly refers back to the phrase "employed by the company." The latter phrase is in no way limited to certain types of employment. We can see no justification for reading into these paragraphs dealing solely with the exercise of options the more restrictive limitations applicable to the grant of options.[3]

■ It is clear that Rauser did remain "employed by the company" for more than a year after the option was granted. After his resignation as a vice president he continued in the employ of Memcor as "Director of Labor Relations," working every Tuesday for a weekly salary of $160. The company continued to deduct his federal taxes from this salary and he continued to participate in the Group Health Insurance Plan. We think it clear that Rauser's continuous and regular service, for a salary, subject to the direction of Memcor renders him an "employee" rather than an independent contractor as LTV argues. *See generally* 56 C.J.S. Master and Servant §§ 1–3.

LTV further argues that Rauser was not eligible to exercise the option under an interpretation of the Plan contained in a Resolution of the Stock Option Incentive Committee. Rauser contends that this interpretation is neither valid nor applicable to him. Assuming that it is, it changes nothing. The resolution simply restates the requirements of Paragraph 6 by substituting the words "terminated, resigns, or in any way leaves the employment of the Company" for the words "cease to be employed by the Company for any reason. * * *" Under either phrase, the question remains whether Rauser ceased to be employed by Memcor when he resigned as a vice president and became Director of Labor Relations. In our opinion he did not.

The material facts relating to Rauser's relation with Memcor were not in dispute before the trial court. The only dispute was whether the uncontested facts showed Rauser to be in the employ of the company within the meaning of the Agreement and Plan until 30 days prior to his exercise of the option. The interpretation of the contracts was a matter of law. The district court correctly held that Rauser was employed by the company within the meaning of the contracts. Thus, the grant of summary judgment on the liability issue was correct.

■ The district court awarded damages based on the difference between the option price and the highest intermediate market price between the date of breach and a reasonable time thereafter. LTV argues, citing Coffin v. State, 144 Ind. 578, 43 N.E. 654 (1896), and Roder v. Niles, 61 Ind.App. 4, 111 N.E. 340 (1916), that under Indiana law, which concededly controls, damages for breach of contract to deliver stock are the difference between the option price and the market value on the date of breach. We

3. "5. ELIGIBILITY OF OPTIONEES
   Options will be granted only to persons: (a) who are salaried employees of the Corporation, and (b) who have supervisory responsibility or receive compensation from the Corporation in excess of $10,000 per year, or are deemed by the Committee to be extremely creative in the interests of the Corporation, and (c) who after the option is granted owns less than 5% of the Corporation's voting stock. The term 'employees' shall include officers as well as other employees and shall include Directors who are also active employees of the Corporation. Neither the members of the Committee nor any member of the Board of Directors who is not an active employee of the Corporation shall be eligible to receive an option under this Plan."
   The agreement with Rauser incorporated the Plan by reference, with the Plan to control in the event of any conflict between the Plan and the Agreement. However, we find insofar as this case is concerned no such conflict.

find these cases inapposite and the rule announced by the district court correct.

In Coffin v. State, *supra*, the plaintiff sued for the failure of the State of Indiana to deliver bonds. The plaintiff contracted to resell the bonds to a third party prior to the breach but that fact was unknown to the State. The Court applied the rule of Hadley v. Baxendale, 9 Exch. 341, and held that the plaintiff could not recover special damages for loss of its resale profits where the State did not know of the resale. In so doing, it treated the bonds as goods and found the measure of damages for non-delivery to be the difference between the market value of the goods and the contract price on the date of delivery. There was not a fluctuating market for the bonds and no question was raised concerning the time within which the plaintiff could be expected to cover. The case did not involve mitigation.

Roder v. Niles, *supra*, was a suit for breach of contract to issue stock. The corporation which was to issue the stock was never formed. The court held that damages were the actual value of the stock at the time it should have been delivered. Again, there was no market for the stock and the issue of mitigation was not involved.

Rauser relies on two cases which are more analogous to the instant one, Citizens' St. R. Co. v. Robbins, 144 Ind. 671, 42 N.E. 916 (1896), and B. L. Blair Co. v. Rose, 26 Ind.App. 487, 60 N.E. 10 (1901). In both, the defendant corporation failed to deliver shares of stock to the plaintiff. In both, there was an existing market for the stock and cover would have been possible. The Indiana courts dealt with the cases as nonfraudulent conversions and awarded damages equal to the highest intermediate market value between the time of conversion and a reasonable time after notice. *Robbins*, decided the same term as *Coffin*, specifically rejected the value on the date of conversion as being unfair to the plaintiff where securities with a fluctuating value were involved. 144 Ind. at 683–684, 42 N.E. at 920–921. A reason-able time was allowed so that plaintiff could cover but not speculate.

Under the facts present here, the district court correctly applied the rule giving Rauser a reasonable time after the breach to cover in the market.

The district court determined that a reasonable time within which to cover extended until June 12, 1967. Defendant contends that the date should have been set at May 5, 1967, which is the date on which plaintiff's mother-in-law signed for a certified letter informing plaintiff of defendant's refusal to honor his tender under the Plan.

On May 5, 1967, Rauser was on a vacation and did not return until May 20, 1967. He learned of defendant's refusal on that date. He testified he believed that he had ordered the post office to forward his mail to his mother-in-law during his absence. The district court charged defendant with the delay between May 5 and May 20 saying that since Memcor had delayed three weeks in responding to the tender the defendant must be charged with the consequences. We agree in principle, but do not find Rauser's vacation absence a consequence of defendant's delay.

This conclusion we particularly reach in view of a letter from Rauser to Memcor under date of March 11, 1967, stating in part: "I am very sorry to learn that Memcor doesn't wish to honor my stock option." While the letter proceeds to outline various reasons why the stock option should have been honored or in the alternative that it would be waived if a suitable employment termination settlement was made with Rauser, the letter is implicit with the recognition that Memcor was intending to deny the validity of the option and that Rauser was aware of this. Perhaps it could be argued that Rauser not hearing from Memcor felt that his letter had been persuasive. However, it is our opinion that this scarcely justifies his leaving on a vacation without making adequate provisions for prompt receipt of his mail. We do not conceive that this standard

for a reasonable time within which to cover differs between the world traveler and one who stays home, assuming that the contract breacher has not been responsible for the failure of notice.

The district court allowed a further period of 23 days for Rauser to get a copy of the Plan, to consult with his attorney and to secure the necessary funds with which to cover. Where complex legal matters and large sums of money are involved, a wrongdoer cannot demand instant action by his victim. Some time must be allowed to assess the situation and to take action.

Various reasons by way of justification of this length of time are advanced by Rauser such as before making a purchase of such stock there would be a necessity for consultation with a broker who in turn would have to secure information from New York, that Rauser's money was in California savings and loan associations with the passbooks being retained in a safety deposit box in Elkhart and that various other facts would have to be taken into consideration before a determination. On the other hand, Rauser had already purported to exercise his option so that the determination of the broker aspect would have seemed to have been behind him. Likewise we do not find it entirely persuasive to consider the element of non-available funds. This was not a transaction of such magnitude that local financing with passbook collateral could not have been considered and presumably achieved.

Nevertheless, on all of the facts present here, we cannot say that the trial court was clearly erroneous in setting the time here under consideration as slightly over three weeks. It is granted that Rauser's own testimony accepted by the court indicated that he was unable to do any of the things he claimed he had to do in connection with mitigation until he returned from California on May 20. Since he could have had the time from the receipt of the letter of May 2, 1967 at his Indiana address, we conclude that the reasonable time began on May 5, 1967 and expired on the first business day following May 28, 1967, 23 days after the arrival of the letter refusing the tender.

A person is expected to take reasonable steps to mitigate after he has reason to know that a breach has occurred. Restatement of Contracts, § 336(1) Comment a. We can not be unmindful that there was almost daily fluctuation in the market price of the stock which no doubt was in some part involved in the merger which had been consummated a short time theretofore. As a matter of fact, it is noted that the stock in June continued to rise and reached a high point in July 1967 of approximately $25 more per share than it had been just two months earlier.

The highest intermediate value between May 6, 1967 and May 29, 1967 was 23⅞ per share and this is the fair market value on which the judgment should have been based.

Finally, defendant asserts that the district court erred in including interest as an element of damages. The general rule is that interest is recoverable at the statutory rate for breach of a contract to pay a definite sum of money or to render performance the value of which may be ascertained in money. Restatement of Contracts, § 337(a). It has been held in Indiana that the question is not whether the damages are liquidated but whether they are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. New York, C. & St. L. Ry. Co. v. Roper, 176 Ind. 497, 507, 96 N.E. 468, 472 (1911). See also Restatement of Contracts, § 337(a), Comment g. Interest is not includable where damages are unliquidated and cannot be ascertained until judgment. Dunham v. Jones, 184 Ind. 46, 52, 110 N.E. 203, 205 (1915), overruled as to another holding, Prudential Ins. Co. of Am. v. Ritchey, 188 Ind. 157, 164–165, 119 N.E. 369, 484.

In the instant case, the damages could be ascertained simply by

checking the market price of defendant's stock on the particular day. There is nothing speculative or subjective about such a determination. Therefore, the District Court correctly allowed the recovery of interest.

The judgment of the district court is modified to reduce the principal amount of plaintiff's damage award from $18,-431.25 based on a market price of 26⅛ per share, to $16,068.75, based on a market price of 23⅞ per share. The judgment is further modified to increase the amount of interest awarded plaintiff from $2,303.90, based on the period from June 12, 1967 through July 12, 1969, to $3,564.04 based on the period from May 29, 1967 through February 9, 1971. This makes the total amount of the judgment, as modified, $19,632.79. As modified, the judgment of the district court is affirmed.

Affirmed as modified.