In re Paul Hiram JOHNSON, Debtor.

Tim ROLAND, Kenneth Roland, Plaintiffs,

v.

Paul Hiram JOHNSON, Defendant.

Bankruptcy No. 87–62145.
Adv. No. 88–6020.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Feb. 23, 1990.

William Kowalski, East Chicago, Ind., for plaintiffs.

David Wickland, Munster, Ind., for defendant.

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT [1]

KENT LINDQUIST, Chief Judge.

## I

### Statement of Proceedings

This adversary proceeding came on for the second-half of a bifurcated bench trial on February 8, 1990 solely on the issue as to the amount of damages to be affixed versus the Defendant–Debtor (hereinafter: "Debtor").

The first-half of the bench trial was held on April 6, 1989 on the issue of liability only, i.e. whether the indebtedness of the Debtor to the Plaintiffs (hereinafter: "Plaintiff Ken, Plaintiff Tim or Plaintiffs") was nondischargeable pursuant to § 523(a)(6) as being the result of certain willful and malicious acts by the Debtor.

By its Findings of Fact, Conclusions of Law and Judgment dated April 14, 1989, this Court held that the indebtedness was nondischargeable pursuant to § 523(a)(6) in that the Debtor intentionally shot the Plaintiffs with the requisite constructive malice in that he acted unreasonably under the circumstances, and without just cause or excuse, as he intended to shoot whomever was in the living room of his residence, although he had no specific intent to shoot the Plaintiffs. 109 B.R. 885. The shooting occurred on September 22, 1984.

Plaintiffs appear by Attorney Kowalski.

Debtor appears by Attorney Wickland.

Submitted. Evidence and arguments heard.

## II

### Findings of Fact

The Plaintiffs filed the following pretrial exhibits:

A. Plaintiff Ken:

 Exh. Description
 No.
 1. Statement of Dr. Charles Williams
 2. Statement of Dr. George Smalls
 3. Methodist Hospital Report
 4. Methodist Hospital Statement

Civ.P. 52 as made applicable by Bankruptcy Rule 7052.

Exh. Description
No.
5. Methodist Hospital ER Report
6. Statement Broadway Radiology
7. N. Southlake Anesthesia Statement
8. Statement Methodist Pathology Service

B. Plaintiff Tim:
Exh. Description
No.
9. St. Margaret Hosp. Statement
10. Reports of St. Margaret Hospital
11. Statement of Dr. Charles Williams
12. Report of Dr. Lee Johnson
13. Statement of Dr. Lee Johnson
14. Reports of St. Mary Medical Center
15. Statement of Nucleopath, Inc.
16. Statement of St. Mary Med. Center

The Debtor had no objection to the authenticity of the above exhibits, and thus they were admitted into evidence without extrinsic proof of identification by a custodian thereof.

The Plaintiff Ken testified as follows:

1. That he is now 28 years old, and was 23 years old at the time of the shooting; that he is now single, and was single at the time of the shooting; that he is presently employed as a shell maker at a foundry.

2. That his prior physical condition was good; that he was shot in the abdomen once; that the bullet is still lodged there, and according to his medical advice the removal "would do more harm than good."

3. That he was taken to the hospital and released on October 12, 1984; that he suffered considerable pain and numbness in his torso area.

4. That after his release he still suffered considerable pain, could only move slowly, and could not play sports.

5. That approximately fourteen weeks after his release from the hospital, he was released from work; that he was netting $250.00 a week at that time, and thus he lost $3,500.00 in earnings; that here was no post-release medication other than tylenol.

6. That he still feels a numbness in his abdomen because of the shooting, and it affected his urinary process.

7. That he has now fully recovered physically in the sense that he can perform his employment duties and play sports.

The Plaintiff Tim testified as follows:

1. That he is now 29 years of age and was 24 when the shooting occurred; that prior to the shooting he was in excellent health.

2. That he was shot four (4) times by the Debtor; twice in the right side, in the right elbow, and his back was creased by one shot.

3. That as a result of the shooting he was admitted and discharged, and subsequently readmitted and redischarged from the hospital as follows:

A. Admitted 09/23/84
B. Discharged 10/19/84
C. Readmitted 10/19/84
D. Redischarged 10/29/84
E. Readmitted 11/09/85
F. Redischarged 11/15/85
G. Readmitted 11/16/85
H. Redischarged 11/23/85
I. Readmitted & Discharged 12/14/85
J. Readmitted & Discharged 03/06/86

4. That upon his initial admission he had surgery wherein he lost one-quarter of one lung, and some of his intestines; that he felt constant, severe pain and required Demerol shots every four hours.

5. That he subsequently incurred reoccurring bowel obstructions, that necessitated additional surgery in November of 1984, and March of 1986.

6. That prior to the shooting he was very active in sports; that he can now only effectively participate in sports at about one-half his former prowess, and cannot lift as well.

7. That he is presently employed as a saw operator which involves physical exertion in lifting heavy metal, and the results from the shooting effect his ability to lift; that he still suffers occasional pain in his chest from the shooting.

8. That at the time of the shooting he was not employed, and it was two years after the shooting before he could seek employment.

9. That after his initial release from the hospital he had to stay in bed for considerable periods, could hardly walk, and was always in pain.

10. That he incurred permanent disfigurement and scarring as a result of the shooting, in that he now carries the evidence of two bullet holes, and a crease in his back from the shooting itself, together with scars on his abdomen and stomach, and a drainage hole from the subsequent surgery.

11. That he has to now urinate more frequently and is apparently now slightly incontinent.

12. That he now tires easily, has problems breathing, has occasional pain in his chest, and cannot physically exert himself as he could prior to the shooting; that he is not required to medicate now; that he has no bullets remaining in his body.

13. That he is a high school graduate, has no special marketable skills, and worked as a laborer in a junk yard prior to the shooting.

14. That although he could not get the itemized bill for his original hospitalization, it was in excess of $10,-000.00, as he saw the actual bills rendered by the hospital; he did not state why the bills could not be obtained and submitted into evidence.

The Debtor objected to this testimony as to the bills in excess of $10,000.00 for the initial hospitalization on the grounds this was inadmissible hearsay. The Court reserved its ruling on that objection.

Doris Randall testified as follows:

1. That she is the mother of the two Plaintiffs; that the Plaintiff Tim was living with her at the time of the shooting.

2. That the Plaintiff Tim was in intensive care and in severe pain for several weeks, and had pain and discomfort off and on until his last surgery.

3. That both Plaintiffs were in good health until the shooting.

4. That both Plaintiffs now tire more easily and that she noticed an attitude change, as they are both now more moody, and the Plaintiff Tim becomes angry easier.

5. That she was familiar with all hospital bills rendered the Plaintiff Tim as they came to the residence and she was certain the bill for the original hospitalization for the Plaintiff Tim was in excess of $10,000.00.

■ The Debtor again objected to the testimony as to the bill allegedly in excess of $10,000.00 on the grounds of hearsay.[2] The Court reserved its ruling as to this objection and now sustains the same.

The Plaintiff Ken's exhibits reflect the following actual damages incurred by him as a result of the shooting:

| | | |
|---|---|---|
| 1. | Dr. Williams | $ 2,475.00 |
| 2. | Dr. Smalls | 4,245.00 |
| 3. | Methodist Hospital | 17,362.35 |
| 4. | Emergency Room | 125.00 |
| 5. | Radiology | 48.00 |
| 6. | Anesthesia | 330.00 |
| 7. | Pathology | 100.00 |
| | TOTAL | $24,668.35 |

**2.** If the $10,000.00 bill had been made available and admitted through a custodian thereof or by stipulation, the amount of the bill would have clearly been admissible under the business records exception to the hearsay rule. Fed.R. Evid. 803(6). The oral statements as to the bill are not admissible under Fed.R.Evid. 803(24), other exceptions, since the debtor was not given advance warning by the plaintiff of his intention to rely on the oral evidence as to the amount of the bill. Pursuant to Fed.R.Evid. 1004(1) other evidence of the contents of a writing is admissible under certain circumstances, none of which are applicable here, i.e. there was no evidence (1) the original is lost or destroyed, (2) the original was not obtainable by any available judicial process or procedure, (3) the original is in the possession of the opponent, or (4) the writing is not closely related to a controlling issue. *See* Fed.R.Evid. 1001(3) and (4) as to definition of "original" or a "duplicate"; Fed.R. Evid. 1002 as to the requirement of an original, and Fed.R.Evid. 1003, as to the admissibility of duplicates. *See also,* Anno.: *Federal Rules of Evidence: Admissibility, pursuant to 1004(1), of other evidence of contents of writing, recording or photography, when the originals were allegedly lost or destroyed.* 83 A.L.R.Fed. 554.

Accordingly, the Plaintiffs proffered oral evidence as to the original bill being in excess of $10,000.00 is inadmissible.

The Plaintiff Ken also lost $3,500.00 in wages for a total of $28,185.35.

The Plaintiff Ken's medical reports were admitted as Plaintiff's Exhibits No. 3.

The Plaintiff Tim's exhibits reflected the following actual damages incurred by him as a result of the shooting:

| | | |
|---|---|---:|
| 1. | St. Margaret Hospital | $ 1,317.20 |
| 2. | Dr. Williams | 1,500.00 |
| 3. | Dr. Johnson | 6,375.00 |
| 4. | Nucleopath | 1,588.00 |
| 5. | St. Mary Hospital | |
| | A. " | 3,348.55 |
| | B. " | 3,970.75 |
| | C. " | 8,496.50 |
| | TOTAL | $26,595.80 |

The Plaintiff Tim was not employed at the time of the shooting and could not prove any lost wages as a result thereof.

The Plaintiff Tim's medical report by St. Margaret Hospital, Dr. Johnson, and St. Mary Medical Center were admitted into evidence as Plaintiff's Exhibit Nos. 10, 12 and 14 respectively.

### III

*Conclusions of Law and Discussion*

Having determined that the indebtedness by the Debtor to the Plaintiffs is nondischargeable, the Court is faced with the more difficult task of affixing damages.

■ Although, whether or not a debt is nondischargeable is a federal question, the underlying debt, i.e. an obligation for assault and battery itself is a state-based claim.

■ In diversity cases in a federal court wherein a state-based claim is being adjudicated, damages are determined by the applicable state law. *Lincoln Nat. Life Insur. Co. v. NCR Corp.*, 772 F.2d 315 (7th Cir.1985). Federal Courts applying Indiana Law use the doctrine of *lex fori* as to damages, *Id. citing, Prudential Life Insurance Co. v. Morgan*, 138 Ind.App. 287, 213 N.E.2d 900 (1966). Under Indiana law, the burden of pleading and proving damages rests with the plaintiff. *Id., citing, Rauch v. Circle Theater*, 176 Ind.App. 130, 374 N.E.2d 546, 553 (1978). Also the circumstances under which punitive dam-

ages are available in a diversity case are governed by state law as are the substantive elements upon which an award of punitive damages may be based. *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438 (10th Cir.1987), *cert. den.* 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). The same principles apply to the enforcement of a state-based claim in the bankruptcy court. While bankruptcy law provides the federal machinery for enforcing a creditor's rights, the rights themselves are created by state law. *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 791 F.2d 524 (7th Cir.1986).

■ Clearly, the Plaintiffs are entitled to general compensatory or actual pecuniary damages as to debts they incurred for medical treatment and hospital care required as a direct and proximate result of the shootings.

■ The Plaintiffs are also entitled to compensatory damages for the *physical* or bodily pain and suffering they incurred. I.L.E. *Damages*, § 62. This may include future pain. *Id.* In addition, damages may be awarded for both past and future for *mental* pain and suffering they incurred. *Id.* at § 63. As a general rule in Indiana, a person can recover damages for mental anguish only when it is accompanied by, and results from, physical injury. (The "impact" Rule). *Naughgle v. Feeney–Hornak Shadeland Mortuary, Inc.*, 498 N.E.2d 1298, 1300 (Ind.App. 1st Dist.1986). However, an exception to that general rule is certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance such as false imprisonment or assault, where a disagreeable emotional experience would normally be expected to be inextricably intertwined with the nature of the deliberate wrong committed. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry or apprehension. *Id.* at 1300, *citing, Charlie Stuart Oldsmobile Inc. v. Smith*, 171 Ind.App. 315, 325, 357 N.E.2d 247, 253

(1976), *modified on rehearing,* (1977), 175 Ind.App. 1, 369 N.E.2d 947, *trans. denied. See also, Captain & Co. v. Stenberg,* 505 N.E.2d 88, 100 (Ind.App.1987) (physical injury not required when claim based on fraud). *Cf. Little v. Williamson,* 441 N.E.2d 974, 975 (Ind.App.1982) (exception does not apply if claim based on negligence); *Moffett v. Glick,* 621 F.Supp. 244 (N.D.Ind.1985) (harassment in the form of verbal abuse does not avoid application of impact rule), *citing, First Fed. S. & L. Assoc. of Gary v. Stone,* 467 N.E.2d 1226, 1235 (Ind.App.1984).

██ Here, there was clearly substantial physical impact as a result of the shootings, i.e. the battery as well as an assault by brandishing the weapon.

██ In order to support an award for mental anguish, however, there must be evidence that the Plaintiffs experienced some physical or psychological manifestation of emotional distress. *Lazarus Dept. Store v. Sutherlin,* 544 N.E.2d 513, 526 (Ind.App.1989); *Groves v. First National Bank of Valparaiso,* 518 N.E.2d 819 (Ind. App.1988), *citing Ramsey v. American Filter Co., Inc.,* 772 F.2d 1303 (7th Cir. 1985). *See also, Moffett v. Gene B. Glick Company,* 621 F.Supp. 244 (N.D.Ind.1985) (award of $50,000.00 for mental anguish not excessive where plaintiff demonstrated a variety of adverse psychological and physical manifestations of emotional distress including loss of appetite, sleep disorder, and a strained home life).

██ Clearly, neither damages for physical pain and suffering nor those for mental pain and suffering can be fixed with any mathematical precision. However, the fact that there is difficulty in estimating damages for mental suffering will not defeat the right to recover therefrom. *Indiana Ry. Co. v. Orr,* 41 Ind.App. 426, 84 N.E. 32 (1908).

██ Permanent or substantial physical injury is not required to recover an award for mental anguish or psychological injury contemporaneous to physical injury. *Kroger v. Beck,* 176 Ind.App. 202, 375 N.E.2d 640, 643 and N. 1 (1978). Once it

has been shown that injury occurred, it is for the trier of fact to determine whether the injury was the catalyst that produced the mental distress. *Id.* at 644 and N. 2.

The Court will next address the issue of punitive damages.

This Court in the case of *Diaz v. Diaz,* (*In re Diaz*), 120 B.R. 967 (Bankr.N.D.Ind. 1989) at pp. 978–82 discussed the issue of punitive damages at some length and held that punitive damages can be awarded in a § 523 nondischargeability proceeding. There we stated in part as follows:

> This Court concludes that when pre-petition conduct justifies the awarding of punitive damages, the Bankruptcy Court may include the same in any judgment finding nondischargeability when they have been proved up by competent, clear and convincing evidence.

* * * * * *

The Court agrees with the conclusion reached by the Court in *In re Adams,* 761 F.2d 1422 [(9th Cir.1985)] *supra.* The "fresh start" policy of the Bankruptcy Code should have no application to a debtor who has committed a nondischargeable act that is so grievous that after a full trial on the merits, and after that court, with a full opportunity to observe the witnesses, finds punitive damages are appropriate based on clear and convincing evidence. The very purpose of § 523(a)(6) is in fact to penalize the debtor for his misdeeds where he has acted willfully and maliciously versus another entity, and thus the allowance of punitive damages is not inconsistent with the purposes of the Code in such an instance.

*Id.* at 982–83.

Generally, punitive damages could not be awarded in Indiana prior to 1984 if the defendant was subject to criminal prosecution. *Nicholson's Mobile Home Sales v. Schramm,* 164 Ind.App. 598, 330 N.E.2d 785, 790–91 (1975). There were exceptions to this general rule. One was that conduct indicating a needless disregard of the consequences would support an award of puni-

tive damages. *Id.* at 791. Also, if the statute of limitations had run on the criminal charges punitive damages would not necessarily be precluded. *Id.* at 791.

■ However, in 1984 the Indiana legislature added I.C. 34–4–30–2 to the Indiana Code. This section provides as follows:

Sec. 2. It is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action. However, a person may not recover both:

(1) punitive damages; and

(2) the amounts provided for under section 1 of this chapter [I.C. 34–1–30–1 refers to offenses against property set out in I.C. 35–43, I.C. 35–42–3–3 or I.C. 35–42–3–4 which relate to offenses against property, criminal confinement, or interference with custody].

This provision had no effective date therein, and was not enacted as emergency legislation.

It has been held that this provision does not have retroactive application. *Gosnell v. Indiana Soft Water Service, Inc.,* 503 N.E.2d 879 (Ind.1987); *Western Smelting & Metals, Inc. v. Slater Steel, Inc.,* 621 F.Supp. 578 (D.C.Ind.1985). The effective date of the above provision following enactment would be July 1, 1984 as this was not emergency legislation. I.C. 1–1–3–1, I.C. 1–1–3–2 and I.C. 1–1–3–3 (the prior effective date was September 1 next following enactment). *Cf.* Ind. Const. Art. 4, § 28 as to emergency legislation. *See, Lohm v. State,* 177 Ind.App. 488, 380 N.E.2d 561 (1978). *See, Blankenship v. McKay,* 534 N.E.2d 243 (Ind.App.1989) for the application of I.C. 34–4–30–1 and I.C. 34–4–30–2.

Here, the incident occurred on September 22, 1984, and thus I.C. 34–4–30–2 is applicable to the case at bar. Thus, the Plaintiffs may be entitled to punitive damages.

■ In Indiana the right to punitive damages must be proved by clear and convincing evidence. *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349, 362–63 (Ind.1982); *Orkin Exterminating Co. v. Traina,* 486 N.E.2d 1019, 1021 (Ind.1986). Inasmuch as this is the standard of proof under § 523(a)(6) to determine liability, the Plaintiff has also met that standard as to punitive damages.

The Court of Appeals of Indiana in the case of *Lazarus Department Store v. Sutherlin,* 544 N.E.2d 513, *supra,* had occasion to summarize the governing principles relating to the award of punitive damages. There the Court stated as follows:

Indiana's standard for punitive damage awards places a heavy burden on the plaintiff. To justify an award of punitive damages, there must be clear and convincing evidence which overcomes the presumption that the defendant's conduct was merely negligent or the result of some honest error. *A.B.C. Home and Real Estate Inspec., Inc. v. Plummer,* (1986), Ind.App., 500 N.E.2d 1257. Rather, punitive damages are recoverable only upon clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppression which was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other human failing. *Bud Wolf Chevrolet, Inc.,* [*v. Robertson,* (1988), Ind., 519 N.E.2d 135] *supra; Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349. Clear and convincing evidence is defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt. It requires the existence of a fact to be highly probable. *Orkin Exterminating Co., Inc. v. Traina,* (1986), Ind., 486 N.E.2d 1019. The defendant is cloaked with rebuttable presumption that his actions, though perhaps tortious, were nevertheless noniniquitous human failings. *Id.*

Punitive damages are not compensatory in nature but are designed to penalize or punish the wrongdoer and dissuade him and others from similar conduct in the future. *Carroll v. Statesman Insurance Co.,* (1987), Ind., 509 N.E.2d 825. They are awarded in addition to the com-

pensatory awards for a financial loss, pain, suffering, and other considerations. *Orkin, supra.* Thus, the sole issue when considering punitive damages is whether or not the defendant's conduct was so obdurate that he should be punished for the benefit of the general public.

*Id.* at 527.

 An award of compensatory damages does not mean that the prevailing party is entitled to punitive damages as well, especially in light of the fact that punitive damages are awarded at the discretion of the court. *Crook v. Shearson Loeb Rhoades, Inc.,* 591 F.Supp. 40, 50–51 (N.D.Ind.1983). There is no right to punitive damages. *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d at 362, *supra.*

The Court of Appeals of Indiana in *Lazarus Dept. Store v. Sutherlin,* 544 N.E.2d 513, *supra,* stated as follows as to the amount of punitive damages that can reasonably awarded and the constitutionality thereof:

> While there is no rule in Indiana requiring that the amount of punitive damages must be within a certain ratio to the compensatory damages, this factor is evidence of the reasonableness of punitive damage award. *See Bud Wolf Chevrolet, Inc., supra.* In *Bud Wolf,* this court affirmed an award of punitive damages that was more than 20 times greater than the compensatory damages awarded. Moreover, the United States Supreme Court recently upheld substantial punitive damage awards against corporations where the compensatory damages were far less than those awarded in the case at bar. In *Browning–Ferris Industries of Vermont, Inc. v. Kleco Disposal, Inc.,* (1989), —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219, the Supreme Court upheld a $6,000,000 punitive damage award based upon a compensatory damage award of $51,146. Similarly, in *Bankers Life and Casualty Co. v. Crenshaw,* (1988), 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62, the Court upheld an award of $20,000 in compensatory damages and $1,600,000 in punitive damages.

*Id.* at 528. *See also, Hibschman Pontiac, Inc. v. Batchelor,* 362 N.E.2d 845 (Ind. 1977).

The *Lazarus* Court upheld an award of punitive damages in the sum of $1,000,000 based upon compensatory damages totaling $307,500, or a 3.4 to 1 ratio.

The Court of Appeals of Indiana in the case of *Indiana & Michigan Electric Company v. Stevenson,* 173 Ind.App. 329, 363 N.E.2d 1254 (1977) also stated as follows in addressing the issue of punitive damages:

> It has been often stated that a high ratio of punitive damages to compensatory damages alone will not be grounds to reverse an award of punitive damages. *Joseph Schlitz Brewing Co. v. Central Beverage Co.,* (1977), [172] Ind.App. [81], 359 N.E.2d 566; *Lou Leventhal Auto Co. v. Munns,* (1975), [164] Ind.App. [368], 328 N.E.2d 734. The purpose of an award of punitive damages is to punish the wrongdoer and thereby deter others from engaging in similar conduct in the future. *Joseph Schlitz Brewing Co., supra.*
>
> Therefore, from what has been said thus far, it appears to this court that there are two primary factors which should properly be considered in reviewing an award of punitive damages. First, the nature of the tort and the extent of the actual damages sustained should be considered. Second, the economic wealth of the defendant should be considered.

*Id.* at 1263.

The *Stevenson* Court upheld awardˢ ˀᶠ $50,000 and $60,000 in punitive damages to the plaintiffs for trespass to their property by the defendants (which resulted in property damage alone). The huge economic wealth of the defendant was a factor in this case when the plaintiffs suffered only $300 and $120 in actual damages respectively. *See also, Emerson v. Markle,* 539 N.E.2d 35 (Ind.App.1989) (court held punitive damages of $150,000 based on actual damages of $1,000., or a ratio of 150 to 1 was not excessive).

In *Hibschman Pontiac, Inc. v. Batchelor*, 362 N.E.2d at 849, *supra,* the court *cited Manning v. Len Immke Buick, Inc.*, 28 Ohio App.2d 203, 276 N.E.2d 253 (1971) with approval that where punitive damages are to be assessed the wealth of the defendant may be shown so that the trier of fact will assess damages that will punish him, and that such a rule is based on the theory that it will take a greater amount of penalty to dissuade a rich person than a poor person from oppressive conduct. However, the *Batchelor* court noted that there appears to be no requirement that evidence of wealth be submitted in cases of punitive damages. *Id.* 362 N.E.2d at 849.

Finally, the Supreme Court of Indiana in the case of *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135 (Ind.1988), which was a contract fraud case, clarified the standard of conduct required to assess punitive damages. The *Robertson* court stated as follows:

> The Court of Appeals initially reversed the award of punitive damages because it found the evidence was insufficient to "permit a conclusion of malice," and that the "determinative issue was whether quasi-criminal malice has been proved." 496 N.E.2d at 777. On rehearing, this view of malice as a prerequisite to punitive damages was not revised, but the punitive damages were found to be in accord with jury instructions given without objection. We find such malice requirement to be inconsistent with a correct application of *Orkin Exterminating Co., Inc. v. Traina,* (1986), Ind., 486 N.E.2d 1019 and *Travelers Indemnity Co. v. Armstrong,* (1982), Ind., 442 N.E.2d 349.

> The sole issue presented in *Traina,* an action arising in tort, was whether the evidence was sufficient to sustain punitive damages. Expressly conceding that punitive damages may be awarded upon a showing of willful and wanton misconduct, even absent malice, ill will or intent to injure, this Court declared that to affirm an award of punitive damages, the reviewing court must find that under the circumstances known, the defendant "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Traina,* 486 N.E.2d at 1023. *Traina* also extended to tort cases the "clear and convincing" rule which had been established in *Travelers.*

Cases recognizing that punitive damages may be awarded in contract actions are in substantial accord as to the obduracy required for such an award. In *Vernon Fire & Casualty Ins. Co. v. Sharp,* (1976), 264 Ind. 599, 608, 349 N.E.2d 173, 180, we recognized that punitive damages could be upheld in contract actions, "when it appears from the evidence as a whole that a serious wrong, tortious in nature, has been committed * * *," and "that the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated." In *Hibschman Pontiac, Inc. v. Batchelor,* (1977), 266 Ind. 310, 315, 362 N.E.2d 845, 848, we permitted an award of punitive damages upon sufficient proof of "elements of fraud, malice, gross negligence or oppression mingled into the breach of warranty." We subsequently acknowledged that punitive damages may be awarded in contract actions "whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages." *Art Hill Ford, Inc. v. Callender,* (1981), Ind., 423 N.E.2d 601, 602. When this Court in *Travelers* restricted the availability of punitive damages by adopting the "clear and convincing" standard of proof, we also imposed an additional requirement beyond the previously recognized alternative elements of obduracy. We stated that punitive damages in contract actions may be allowable upon evidence proving malice, fraud, gross negligence or oppressiveness if accompanied by further evidence "inconsistent with the hypothesis that the tortious conduct was the result of a

mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing." *Travelers,* 442 N.E.2d at 362.

> Therefore, *in both tort and contract actions, while proof of malice may be relevant to show the obduracy necessary for punitive damages, the element of malice is a mere alternative, not an essential prerequisite, to obtain punitive damages.*

*Id.* at 136–37. (Emphasis added).

The *Robertson* Court sustained an award of $75,000.00 in punitive damages when the plaintiffs were awarded $3,500.00 in compensatory damages.

 The Plaintiff Ken incurred actual pecuniary damages in the sum of $28,668.35 for medical and hospital bills incurred plus $3,500.00 in lost wages for a total of $28,185.35, and he shall be awarded that sum in compensatory damages. He suffered considerable past physical and mental pain and suffering at least for the approximate two weeks he was in the hospital and the fourteen weeks after he was released from the hospital. He is presently 29, and will continue to incur some minor discomfort, pain and suffering from overtiring, as well as appearing to have suffered slight changes in his behavior for the reasonably foreseeable future. Although his overall health appears to now be essentially regained, he will probably carry the bullet fired from the Debtor's gun around with him for the rest of his life, which is an element of future mental pain and suffering for which he should be compensated.

Thus, in addition to the $28,668.35 in damages for actual pecuniary loss, the Court will add thereto the sum of $60,000.00 or approximately two times, the special damages proved for past physical and mental pain and suffering, and for future mental pain and suffering, and emotional anguish.

 Finally, the Court will assess punitive damages. Although the Court found that the Debtor acted with constructive rather than actual malice at the bifurcated nondischargeability portion of the tri-

al, actual malice is not required in Indiana to award punitive damages. The Debtor's conduct cannot be characterized as a mere negligence, overzealousness or an honest error in judgment, but was clearly gross negligence or a reckless disregard of the consequences. This is sufficient in Indiana to award punitive damages although it would not be sufficient as to establishing the threshold liability issue initially under § 523(a)(6). This is a scenario where the public interest must be considered as to the reckless use of fire arms. However, the second element that may be considered in assessing punitive damages, i.e. the economic wealth of the Debtor presents a problem. The Debtor is a pensioner, recently retired, who grosses $942.63 and nets $729.56 a month from his pension. No evidence of his present tangible or intangible assets, or lack thereof, was submitted by either party. This militates against the affixing of substantial punitive damages. Accordingly, the Court will award the Plaintiff Ken punitive damages in the additional sum of $28,668.35, or a sum equal to the actual pecuniary damages incurred.

 The Plaintiff Tim is clearly entitled to an award of at least $26,595.60 in compensatory damages for actual pecuniary losses incurred in the form of hospital and medical bills. Inasmuch as he was not employed at the time of the shooting, and there was no evidence that he was precluded from obtaining gainful employment thereafter because of the shooting, no damages can be awarded for lost wages.

 The Plaintiff Tim clearly suffered substantial physical injuries which resulted in partial disability for a period from the time of the shooting until his last operation in March, 1986. He was partially disabled for a period of approximately two years from the time of the shooting, and never fully recovered until his last surgery in March of 1986. He was required to undergo surgery three times, as a result thereof he lost one quarter of a lung, and some intestines. He was in excellent health prior to the shooting, and was active in sports. This ability to participate in athletics has been diminished considerably, and he was

only 24 when he was shot. He has no marketable skills, and his employment, which necessitates heavy labor, is made more difficult because of the direct and proximate result of the shooting. He has substantial permanent scarring both as a result of the shooting and the resultant surgery. Thus, the Plaintiff Tim has incurred considerable past physical and mental pain and suffering and emotional anguish as a direct result of the shooting, and the evidence indicates that he will continue to do so to some extent in the future.

Accordingly, in addition to the $26,595.60 in actual pecuniary loss, the court will add thereto the sum of $100,000.00 for past and future physical and mental pain, and suffering and emotional anguish, or approximately four times the special damages incurred by the Plaintiff Tim.

Finally, the Court will also assess punitive damages. For the same reasons as expressed in awarding punitive damages to the Plaintiff Ken, the Court will limit punitive damages to $26,595.60, or a sum equal to the actual pecuniary damages incurred.

■ Ancillary obligations such as attorney's fees and interest may attach to the primary debt found to be nondischargeable. Consequently, their status depends on that of the primary debt. Thus, when a debt is determined to be nondischargeable the attendant attorney's fees, interest and costs are also nondischargeable. *Klingman v. Levinson*, 831 F.2d 1292, 1296–97 (7th Cir. 1987), *citing, In re Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985), and *In re Foster*, 38 B.R. 639, 642 (Bankr.M.D.Tenn.1984). *See also, Matter of Church*, 69 B.R. 425, 435–36 (Bankr.N.D.Tex.1987).

The Court will first address the issue of what attorneys fees, if any, are allowable as an element of damages.

■ Generally in Indiana, each party must pay his own counsel fees in the absence of a statute or agreement providing otherwise. *Trotcky v. Van Sickle*, 227 Ind. 441, 85 N.E.2d 638 (1949); *St. Joseph's College, et al. v. Morrison, Inc.*, 158 Ind. App. 272, 302 N.E.2d 865 (1973); *Parrish v.*

*Terre Haute Sav. Bank*, 438 N.E.2d 1 (Ind. App. 4th Dist.1982).

■ In the case at bar there is no relevant statute allowing the awarding of attorney's fees to the prevailing party, arising out of a claims for personal injuries as opposed to an offense against property, nor was any agreement between the parties relating to the same extant. Accordingly, no attorney's fees can be awarded to the Plaintiffs herein.

The Court next turns to the issue of prejudgment interest.

■ When a federal judgment is based on a state law claim, as here, the Court must look to state law to determine the propriety of prejudgment interest on recovery. *Travelers Insurance Company v. Transport Insurance Company*, 846 F.2d 1048 (7th Cir.1988). However, federal law governs as to post-judgment interest on a federal judgment. *Id. See*, 28 U.S.C. § 1961(a).

Indiana Code I.C. 34–4–37–2, *et seq.* effective in 1988 now permits the awarding of interest on tort claims. That statute limits the rate of interest to a range of 6% to 10% per annum. I.C. 34–4–37–11. In addition, the time of accrual is limited. I.C. 34–4–37–10. The statute is expressly not applicable to any part of a judgment that is awarded as punitive damages. I.C. 34–4–37–5.

The question remaining is whether, as to the compensatory damages awarded the Plaintiff Ken in the sum of $28,185.35, and to the Plaintiff Tim in the sum of $26,575.60, the Court may award prejudgment interest based upon a 1988 statute, when the torts occurred in 1984, i.e. does the statute apply retroactively or prospectively?

■ State courts are the final arbitrators of the states' own laws. *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).

■ In applying a state statute, federal courts are bound by the construction given a statute by the highest court within the state. *Kifer v. Liberty Mutual Ins.*

*Co.,* 777 F.2d 1325 (8th Cir.1985); *Auerbach v. Rettaliata,* 765 F.2d 350 (2d Cir. 1985). Legislative intent is a matter of state law on which the highest court in the state speaks with finality. *Mullaney v. Wilbur,* 421 U.S. 684, 690–91, 95 S.Ct. 1881, 1885–86, 44 L.Ed.2d 508 (1975); *Della Grotta v. State of R.I.,* 781 F.2d 343 (1st Cir.1986).

■ Federal Courts must also follow the holding as to a state law of a states' intermediate appellate court of *state wide jurisdiction* whose decisions are binding on *all* trial courts in the absence of a conflicting decision by the states' highest court. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Seymour v. Union News Co.,* 217 F.2d 168 (7th Cir.1954); *Jones v. Schellenberger,* 225 F.2d 784 (7th Cir.1955), *cert. denied* 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956); *Preston v. Aetna Life Insur. Co.,* 174 F.2d 10 (7th Cir.1949), *cert. denied* 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504 (1949) (Illinois Appellate Court decision would not be followed where conflicting with other Illinois Appellate Court decisions).

■ When there are no reported Indiana decisions on the issue in controversy, or the Court is faced with a state law issue that is unsettled, the Federal Court must look to all available data and adopt a rule which it believes the Indiana Supreme Court would adopt. *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759, 761 (7th Cir.1986). *Heinhold v. Bishop Motor Exp., Inc.,* 660 F.Supp. 382 (N.D.Ind.1987); *Neofes v. Robertshaw Controls Co.,* 409 F.Supp. 1376 (S.D.Ind.1976). In making such a decision without a discernible doctrinal trend, the Court may reasonably assume that the state court will follow the rule that appears best to effectuate the policies that underlie the rule. *Bowen v. U.S.,* 570 F.2d 1311 (7th Cir.1978).

■ Indiana statutes are to be construed as having a prospective operation unless the language plainly indicates that they were intended to be retrospective. I.L.E., *Statutes,* § 193.

■ The general rule that statutes are prospective and will not be construed to operate retroactively unless the legislature's intent is clear or the language imperatively requires it, does not apply to remedial statutes. *Id.* at § 194.

■ The Rule of Construction applicable to remedial statutes is that a statute must be so construed as to make it effect the purpose for which it was enacted, and to that end, it will be applied to past as well as to future transactions, although it does not in terms so direct, unless it will impair some vested right or violate some constitutional guaranty. *Id.* at § 194.

It has been stated as follows regarding the retroactivity of a remedial statute:

Thus, where retroactive operation of remedial statutes is necessary to carry out the purpose of the law, and no new rights are given or existing rights taken away, and only a new remedy is afforded for the enforcement of an existing right, the statutes will be given a retroactive operation, since the rule that statutes cannot be made to operate retroactively where vested rights would be affected cannot be invoked where no new right is given or no existing right is taken away, but only a new remedy is afforded for the enforcement of an existing right.

I.L.E., *Statutes,* § 194.

■ An Amendatory Act is ordinarily to be construed as prospective and not as retroactive in the absence of express language declaring it to be retroactive. I.L.E., *Statutes,* § 195. However, where the new legislation does not impair a previously existing right or deny a remedy for its enforcement, but merely modifies the proceedings it applies to in all cases pending and subsequent to its enactment. *Id.* at § 195.

■ The language of I.C. 34–4–37–2 *et seq.* makes no express statement that it should apply retroactively. There was no prior statute in Indiana touching on the awarding of prejudgment interest for torts, although case law has permitted the same where the damages sought to be recovered are complete and ascertainable as of a par-

ticular time, and in accordance with fixed rules of evidence, and known standards of value. *See e.g., Fort Wayne National Bank v. Scher,* 419 N.E.2d 1308 (Ind.App. 1981), *citing,* among other cases, *Rauser v. LTV Electrosystems,* 437 F.2d 800 (7th Cir. 1971). The *Fort Wayne* court held in a conversion case that the trier of fact had no discretion as to the awarding of prejudgment interest for deprivation of the use of money or its equivalent, where all necessary elements all present and undisputed. *Id.* at 1311–12, *citing, New York, etc. v. Roper,* 176 Ind. 497, 96 N.E. 468 (1911), and *Indianapolis Machinery Co., Inc. v. Cohen,* 177 Ind.App. 208, 378 N.E.2d 931 (1978).

The Court cannot apply I.C. 34–4–37–2 *et seq.* retroactively to this case as it categorically grants a tort claimant a new substantive right, i.e. the right to prejudgment interest for compensatory damages. That statute is not merely remedial. As noted by the district court in *Western Smelting & Metals, Inc.,* 621 F.Supp. 578, *supra, citing, Herrick v. Sayler,* 245 F.2d 171, 174 (7th Cir.1957), a statute that increases a defendant's liability cannot be applied retroactively.

■ However, Indiana courts have awarded prejudgment interest to a tort claimant as an element of damages. Indiana Code 24–4.6–1–102 governs the rate of prejudgment interest in Indiana in absence of an agreement and provides as follows:

When the parties do not agree on the rate, interest on loans or forbearances of money, goods or things in action shall be at the rate of eight percent (8%) per annum until payment of judgment.

The Court in *Fort Wayne National Bank v. Scher,* 419 N.E.2d 1308, *supra,* stated as follows:

Interest is recoverable in actions in tort where the damages sought to be recovered are complete and ascertainable as of a particular time and in accordance with fixed rules of evidence and known standards of value. *Rauser v. LTV Electrosystems* (7th Cir.1971), 437 F.2d 800; *Independent Five & Ten Stores of*

*N.Y. v. Heller* (1920), 189 Ind. 554, 127 N.E. 439; *New York etc. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468; *Indiana Telephone Corp. v. Indiana Bell Telephone Co., Inc.* (1976), 171 Ind.App. 616, 358 N.E.2d 218; *Soft Water Utilities, Inc. v. Le Fevre* (1974), 159 Ind.App. 529, 308 N.E.2d 395; *New York Central Railroad Co. v. Churchill* (1966), 140 Ind. App. 426, 218 N.E.2d 372.

The award of interest is founded solely upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest be added, the injured party cannot be fully compensated for the loss suffered. *New York etc. v. Roper, supra; Grobe v. Kramer* (1942), 178 Misc. 247, 33 N.Y. S.2d 901. Interest is recoverable not as interest but as additional damages to accomplish full compensation. *Ind. Tel. Co. v. IBTC, Inc., supra.*

In some jurisdictions, the allowance of interest is a matter of legal right; in others it is a matter within the sound discretion of the trier of fact.

Although Indiana decisions appear in general agreement as to the prerequisites to recovery such damages, they disclose some confusion on whether the award, once the prerequisites are established, should be of right or discretionary with the fact finder.

The early cases of *Wabash Railroad Co. v. Williamson* (1891), 3 Ind.App. 190, 29 N.E. 455 and *Chicago, St. L. & P.R.R. Co. v. Barnes* (1891), 2 Ind.App. 213, 28 N.E. 328 took the view that their award was discretionary.

Then in *New York, C. & St. L. Ry. Co. v. Roper* (1911), 176 Ind. 497, 96 N.E. 468, our Supreme Court considered the propriety of such awards. The court pointed out that the principle involved was not the award of interest as such, but was the rule of full compensation utilizing the statutory interest rate as a measure for the value of lost use of the property. The court then considered discretionary application and stated,

"The law dispenses no favors, and jurors should mete out equal and exact

justice, and should not have the right to allow or refuse interest as one of the elements of just compensation. But in fixing the amount of damages in cases of this character they should be instructed.

\* \* \* \* \* \*

We find such problems to be quite distinct, however, from the notion that when all the necessary elements are present and undisputed, the award of damages for loss of use is a discretionary matter. In this regard we think *Roper* correctly states the rule, and it follows that upon the facts before us the court erred in not awarding damages for the lost use of the automobile and payroll checks from the time of their conversion. *Indianapolis Machinery Co., Inc. v. Cohen* (1978), [177] Ind.App. [208], 378 N.E.2d 931.

*Id.* at 1311–12.

The expenses that the Plaintiffs incurred as a direct and proximate consequence of the Debtor's wrongful acts are pecuniary damages that are complete and ascertainable, and thus the Plaintiffs shall be awarded 8% prejudgment interest thereon.

The final issue is the date of accrual of the prejudgment interest pursuant to I.C. 24–4.6–1–103 as it was not proven by the Plaintiffs when Plaintiffs made a demand on the Debtor to pay them prior to the filing of their complaint. (Although the adversary complaint asserts a previous suit was filed in the state court on April 24, 1985, this was not proven up at trial). In this situation, the interest shall accrue from the date the Plaintiffs' complaint was filed on February 12, 1988. *See, Continental Casualty Co. v. Novy*, 437 N.E.2d 1338 (Ind.App.1982).

It is therefore,

ORDERED, ADJUDGED, AND DECREED that the Plaintiff Ken recover of the Debtor the sum of $117,336.70, plus costs. The actual pecuniary damages of $28,185.35 shall accrue prejudgment interest at the rate of 8% per annum from February 12, 1988, the date of the filing of the complaint. The total amount of the judgment or $117,336.70 shall bear post judgment interest at the rate of 7.21% per annum pursuant to 28 U.S.C. § 1961(a). And it is further

ORDERED, ADJUDGED, AND DECREED that the Plaintiff Tim recover of the Debtor the sum of $153,191.20 plus costs. The actual pecuniary damages of $26,575.60 shall accrue prejudgment interest at the rate of 8% per annum from February 12, 1988, the date of the filing of the complaint. The total amount of the judgment, $153,191.20, shall bear post judgment interest at the rate of 7.21% per annum pursuant to 28 U.S.C. § 1961(a).

The clerk shall enter this judgment on a separate document pursuant to Bankr.R. 9021.